MANCHESTER FIRE INS. CO. et al. v. HERRIOTT, Treasurer of State of Iowa, et al.

(Circuit Court, S. D. Iowa, Central Division. January 12, 1899.)

1. FOREIGN CORPORATIONS — STATE REGULATION OF INSURANCE COMPANIES — CONSTRUCTION OF IOWA STATUTE.

The insurance laws of Iowa (Code, § 1333), require foreign insurance companies doing business therein to pay to the state each year a percentage of the gross premiums received from such business during the previous year. The statute contains no provisions for the collection of such tax from the property of the companies, but provides that such companies shall not be authorized to do business in the state without a certificate from the state auditor, and forbids the auditor to issue a certificate to any company unless the tax for the previous year has been paid. *Held*, that under such laws the officers of the state are not authorized to collect such taxes by suit or distraint of property, but that the only effect of the

nonpayment of the tax would be that the auditor would not issue a certificate authorizing the delinquent company to do business in the state during the ensuing year.

**2. JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.**

A suit by foreign insurance companies against the officers of a state to restrain the enforcement of a law requiring such companies to pay to the state a percentage of premiums received from business done therein, where the relief really sought, and the only effective relief that could be granted, is to compel the state to permit the complainants to continue in business therein without payment of the tax, is, in effect, a suit against the state within the prohibition of the eleventh constitutional amendment, of which a federal court is without jurisdiction.

**3. SAME—COMPELLING ACTION BY STATE OFFICER—DUTIES NOT MINISTERIAL.**

A federal court is without jurisdiction to compel the auditor of a state to issue to foreign insurance companies certificates which are necessary under the state laws to authorize such companies to do business in the state, without the payment of a tax required by the laws as a condition precedent to the issuance of such certificate, and where the auditor is expressly prohibited from issuing a certificate until the tax has been paid.

**4. FOREIGN CORPORATIONS — POWERS OF STATE — TAX ON PRIVILEGE OF CONTINUING IN BUSINESS.**

Where a foreign corporation has been admitted into a state, and has, in connection with the business it was authorized to carry on, acquired property, or made contracts therein, such property and contracts are entitled to the equal protection of the laws, but the power and right of the state to preclude such corporations from entering includes the right to preclude them from continuing in business therein, and also includes the right to impose conditions upon such continuance, and a state law imposing a tax upon a foreign corporation doing business in the state as a condition of granting the right to continue its business therein is not a violation of any of the constitutional rights of the corporation.

**5. SAME—LEGISLATIVE DISCRETION—POWERS OF COURTS.**

A state having the undoubted right, within constitutional limits, to impose conditions upon which it will grant to foreign corporations the privilege of doing business therein, whether such conditions are onerous, discriminatory, or otherwise inexpedient, are matters for the consideration of the legislature, and of which courts cannot take cognizance.

**6. SAME—EQUALITY OF TAXATION.**

A state statute imposing a license tax upon foreign insurance companies doing business therein as a condition of the issuance to them of a certificate authorizing them to continue in business for the ensuing year, is not in violation of a provision of the state constitution requiring equality of taxation because the tax imposed is greater upon companies organized in foreign countries than upon domestic companies or those of sister states, as such statute is not an exercise of the power of taxation upon property or persons, but of the right to impose terms and conditions upon which it will grant certain privileges to foreign corporations, and compliance with which conditions is optional with the companies.

In Equity. Submitted on motion for a preliminary injunction and on demurrer to the bill.

McVey & McVey, for complainants.

Milton Remley, Atty. Gen. of Iowa, for defendants.

SHIRAS, District Judge. The bill in this case is filed on behalf of some 32 fire insurance companies doing business in the state of Iowa, but incorporated under the laws of Great Britain and other states foreign to the United States, the ultimate purpose of the bill being to test the constitutionality of section 1333 of the Code of Iowa, which,

in substance, provides that all insurance companies incorporated under the laws of a state or nation other than the United States shall, at the time of making the annual statements as required by law, pay into the state treasury 3½ per cent. of the gross amount of premiums received for business done in the state of Iowa during the preceding year; that all insurance companies incorporated under the laws of a sister state of the Union shall pay into the treasury 2½ per cent. of the gross amount of premiums received during the preceding year; and that all insurance companies incorporated under the laws of the state of Iowa, not including county, mutual, and fraternal beneficiary associations, shall pay into the treasury 1 per cent. of the gross amount received from premiums and assessments after deducting amounts paid for losses and premiums returned; it being further provided that upon payment of the proper sums duplicate receipts therefor should be issued, one of which must be filed with the auditor of state, who is then authorized to issue the annual certificate requisite to enable the company to continue in business during the coming year. In the bill filed it is averred that the complainant companies, more than 15 years ago, were admitted into the state of Iowa for the purpose of transacting the business of insurance, and that they then fully complied with all the provisions and requirements of the laws of Iowa necessary to secure their lawful admission into and recognition by the state, and that they have since complied each year with the requirement of the state laws, and have each year had issued to them the certificate showing their authorization to continue in business in Iowa. It is further averred that in reliance upon this action on part of the state the complainants have expended large sums of money in establishing agencies, in securing offices, in advertising, and in providing the materials necessary to conduct their business in Iowa, and that they have entered into many contracts of insurance with the citizens of Iowa, which are now in force, and have expended large amounts in meeting the obligations arising in Iowa in connection with the business which they were authorized by the state to undertake in Iowa. It is further charged in the bill that up to the year 1897 no discrimination in the burden of taxation had been made between foreign and domestic corporations engaged in the business of insurance in the state of Iowa, but that in that year the legislature enacted the existing Code of Iowa, which contains the section already cited, imposing upon foreign companies a heavier and unequal burden of taxation as compared with corporations created under the laws of Iowa, and as compared with companies created under the laws of the states of the Union other than Iowa; and it is averred in the bill that the provisions of this section are in violation of the fourteenth amendment to the constitution of the United States, of the provisions of the civil rights act, and of article 8, § 2, of the constitution of the state of Iowa, which provides that "the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals." The bill filed is quite lengthy, covering some 34 printed pages, but the foregoing brief summary is perhaps all that is needed to show the grounds upon which com-

plainants rely in seeking an injunction to restrain the enforcement of the provisions of the section of the Code already cited.

To this bill the defendants have interposed a demurrer practically based upon two grounds: First, that, although nominally against the treasurer and auditor of state, yet in fact the suit is one against the state of Iowa, and is, therefore, not within the jurisdiction of this court; and, second, that the facts averred in the bill fail to show that the legislation complained of contravenes any provision of the federal or state constitution, it being in fact but the exercise, on part of the state, of its undoubted right to impose such terms as it may deem best upon foreign corporations seeking to enter the state, or, having entered, seeking to continue in business therein. In support of the proposition that in fact the state is the real party in interest, and therefore the suit is within the prohibition of the eleventh amendment to the constitution of the United States, which declares that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state," counsel for defendants cite the cases of In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, New Hampshire v. Louisiana, 108 U. S. 76, 2 Sup. Ct. 176, and Cunningham v. Railroad Co., 109 U. S. 446, 3 Sup. Ct. 292, 609, which, read in connection with the later cases of Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, and In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, give the test to be applied in determining whether a given suit is or is not to be deemed one against a state. In the latter case (page 190, 149 U. S., and page 793, 13 Sup. Ct.) it is said:

"The object of this petition was, we repeat, to protect the property; but, even if it were regarded as a plenary bill in equity, properly brought for the purpose of testing the legality of the tax, we ought to add that, in our judgment, it would not be obnoxious to the objection of being a suit against the state. It is unnecessary to retravel the ground so often traversed by this court in exposition and application of the eleventh amendment. The subject was but recently considered in Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, in which Mr. Justice Lamar, delivering the opinion of the court, cites and reviews a large number of cases. The result was stated to be that, where a suit is brought against defendants who claim to act as officers of a state, and, under color of an unconstitutional statute, commit acts of wrong and injury to the property of the plaintiff, to recover money or property in their hands unlawfully taken by them in behalf of the state, or for compensation for damages, or, in a proper case, for an injunction to prevent such wrong or injury, or for a mandamus in a like case to enforce the performance of a plain, legal duty, purely ministerial, such suit is not, within the meaning of the amendment, an action against the state."

In Pennoyer v. McConnaughy, supra, a bill was filed by a citizen of California in the United States circuit court for the district of Oregon against the governor, secretary, and treasurer of the state of Oregon to restrain them from selling and conveying certain lands claimed by the state under the act of congress of March 12, 1860. The supreme court held that, although the suit was against the officers of the state, it was not against the state, within the meaning of the eleventh amendment to the constitution; and the decision in that case,

and others upon which it is based, clearly establish the principle that the fact that the suit is against the officials of a state does not necessarily show that the action is within the prohibition of the eleventh amendment, as being, in essence, a suit against a state, but that in determining that question regard must be had to the substance of the relief sought. If the purpose of the action is to secure protection to property or to personal or contract rights against injurious attacks thereon by state officials in seeking to enforce an unconstitutional law, the federal courts will not be debarred from taking jurisdiction simply because the defendants are in fact state officials. The eleventh amendment protects the state from being sued directly, and from suits against its officials wherein affirmative action is sought affecting the property, powers, or rights of the state; but it does not deprive individuals, personal or corporate, of the right to invoke judicial protection for personal, property, and contract rights against invasions by state officials assuming to act under illegal or unconstitutional enactments. Board v. McComb, 92 U. S. 531; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962; Allen v. Railroad Co., 114 U. S. 311, 5 Sup. Ct. 925, 962. Treating this case, therefore, as a proceeding to restrain the enforcement of an illegal or unconstitutional tax, it would fall within the class of cases which are not deemed to be within the inhibition of the eleventh amendment; but, if the real purpose sought to be accomplished is to compel the defendants, acting in their capacity as state officials, to take affirmative action, which, when taken, will bind the state, then the case falls within the class deemed to be in fact against the state, and therefore within the constitutional inhibition.

What, then, is the real purport of the present proceeding? It is averred in the bill that, if not restrained from so doing, the state treasurer will seek to collect the tax assessed against the several complainant companies by distraint upon their property, or by suit to recover the amount of the tax; but in connection with the bill the parties have filed a written stipulation to the effect that the allegations of the bill with respect to any proposed action on part of the defendants should be construed to mean only that the defendants would take such action in the premises, and no other, as is authorized and commanded by the laws of the state of Iowa. The sections of the Code imposing the tax complained of do not provide any method for the collection of the same from the property of the insurance companies. By the provisions of sections 1723 and 1724 of the Code it is declared that, to be authorized to carry on the business of insurance in the state, every foreign company, on the 1st of March in each year, must obtain from the auditor of state a certificate showing that the company has complied with the provisions of the law applicable thereto; and all agents are prohibited from taking risks or transacting the business of insurance in the state for any foreign company, unless the certificate showing compliance with the law has been issued on behalf of the company by the auditor; and by the provisions of section 1333 the auditor is forbidden to issue the certificate unless the tax provided for by that section has been duly paid into the state treasury. If the tax is paid, and the other requirements of the law

have been met, the auditor will issue a certificate authorizing the company to continue in the business of insurance for the ensuing year. If the tax is not paid, the certificate will not be issued, and the defaulting company will be without authority to further carry on its business in the state. It would seem clear that the state could not enforce the payment of the tax provided for in section 1333, and yet refuse to issue a certificate authorizing the company to carry on the business upon which, in effect, the tax is imposed, and there does not seem, therefore, to be any support in the law to the theory that the state treasurer may undertake to enforce payment of the tax by suit, or by distraint of property. As the parties, by their stipulation, have agreed that the charges in the bill are to be construed to mean that the state officials will take such action only as is authorized and commanded by the law of Iowa, and as the Code does not provide for any method of enforcing the payment of the tax by suit or by distraint, it would seem that the only result of the nonpayment of the tax will be that the auditor will not issue to the companies a certificate of authority to continue in business after the 1st of March next. If the court should now grant an injunction restraining the state treasurer from doing what the bill charges he will do, to wit, from proceeding to collect the tax by suit or distraint, that would not secure to the complainants the issuance of the certificate of authority by the state auditor; and without the issuance thereof the companies and their agents are forbidden from further carrying on the business of insurance within the state. The real gravamen of the bill is that the companies will be debarred from doing business in the state unless they pay the tax, and the relief sought is that the state shall be compelled to permit them to continue in business without the payment of the tax on the ground that the same is illegal and unconstitutional. It is clear that under the provisions of the Code of Iowa the complainant companies cannot lawfully continue in business in this state without being authorized so to do, and it is clear that this authority must come from the state, the statutory evidence being the certificate of the state auditor. It cannot be questioned that under the eleventh amendment this court would be wholly without jurisdiction to grant a mandatory injunction requiring the state to grant authority to the complainant companies to continue in business during the coming year, and the court is equally without jurisdiction to compel the state auditor to issue certificates as evidence that the state has granted authority to the companies, because in both instances it would be compelling the state to yield obedience to the process of the court, which is the very matter the eleventh amendment is intended to prevent. The case is not one wherein the power of the court is invoked to compel a state officer to do some purely ministerial act, which, under the law and the facts of the special case, it is his duty to do, but the real purpose of the bill is to compel the state to permit the complainant companies to carry on business in Iowa without the payment of the tax which the legislature has imposed upon the companies as a condition to the exercise of such right. Under the provisions of the Code of Iowa, the state auditor has not only no authority to issue the certificates unless the tax is paid, but he is expressly forbidden from so

doing, and the claim is that the law is invalid, but it is certainly not the duty of the state auditor to disregard the plain provisions of the Code, and to issue the certificates on the theory that the legislature had no right to enact the law, and therefore the jurisdiction of the court to compel the issuance of the certificates cannot be sustained on the theory that the issuance thereof is a ministerial duty, plainly imposed by law upon the auditor.   The bar to the right of the complainants to hereafter carry on the business of insurance in Iowa does not arise from any failure of the state auditor to perform the duties of his office, or from any act by him done or omitted as an individual, but it is created by the express act of the legislature in imposing the tax complained of upon foreign companies, and making the payment of the tax a condition to the right to continue in business in the state; and therefore it would seem that the real purpose of the bill is to compel the state, through its officials, to recognize the right of the complainants to continue in business in the state without the payment of the tax imposed by the legislature, and, if this is the true purport of the bill filed, it is then a case over which, under the eleventh amendment, this court cannot take jurisdiction. If, however, there exists some ground upon which the jurisdiction of the court can be sustained, it is clear that the complainant companies are not entitled to any relief upon the facts set forth in the bill, unless it is made clear that the provisions of section 1333 of the Code are invalid and void.   On behalf of complainants it is admitted that a state has the right to wholly exclude foreign corporations other than those engaged in interstate commerce or in carrying on the business of the United States from admission into the state, and it may prescribe the condition upon which such companies may enter the state; but it is claimed that, if foreign companies are admitted into the state, and permitted to engage in business therein, the state is then debarred from imposing further conditions on the right to continue in business, and in the exercise of the right of taxation it cannot impose any burden upon the corporation other or more onerous than is imposed on domestic corporations engaged in the like business; that when a foreign corporation is admitted within a state, and engages in business therein, having fully complied with the requirements and conditions then imposed by the law of the state, it comes within the protection of the fourteenth amendment to the federal constitution, and of the provisions of the civil rights act; and, having thus become entitled to the equal protection of the laws of the state and of the United States, it cannot rightfully be subjected to a burden of taxation greater than that imposed upon like domestic corporations, and that, therefore, the provisions of section 1333 are invalid and void, because thereby corporations created under the laws of foreign countries are discriminated against as compared with corporations created under the laws of states other than Iowa, as well as when compared with corporations created under the laws of Iowa.   In support of the contention of complainants, counsel have submitted a very full and elaborate brief, citing at length from numerous decisions, and have supported the same by an able oral argument, which, if space and time permitted, ought, perhaps, to receive a more extended

discussion than can now be accorded; but, as I understand the decisions of the supreme court of the United States, the pivotal questions involved in the case have been settled by that court. There can be no doubt upon the proposition that if a foreign corporation is admitted into a state, and lawfully engages in business therein, its property and rights within such state are entitled to the equal protection of the law, the same as those of a like domestic corporation; but that is not the point at issue in this case. The provisions of section 1333 of the Code do not affect the property of the companies, nor impose any lien or burden thereon. They impose a burden upon the right of the companies to continue in the business within the state after the 1st of March next. This burden is in form and in substance a tax, but it is not a tax imposed upon the tangible property of the companies. It is a burden in the form of a tax, imposed as a condition upon the right of the companies to continue in business in Iowa. It cannot be denied that the state has the right to prescribe the terms, conditions, and burdens subject to which a foreign corporation can obtain the right of admission into the state, and it is beyond question that, so long as the provisions of section 1333 remain in force, no foreign corporation can secure the privilege of admission into the state, except upon a compliance with its requirements. But it is said that, after a foreign corporation has once rightfully entered the state, and engaged in business therein, no additional burden or restrictions can be imposed as a condition to the exercise of the right to continue in business. The power and right of the state to exclude foreign corporations, not engaged in interstate commerce, or in the furtherance of the business of the United States, from entering the state, includes the right to preclude such foreign corporations from continuing in business, and also includes the right to impose conditions upon such continuances. When a foreign corporation has been admitted into a state, and has, in connection with the business it was authorized to carry on, accumulated property, or entered into contracts, such property and contract rights are under the protection of the law, but the right to invoke protection for such acquired property does not confer upon the corporation the right to insist that it shall be permitted to enter into further contracts, or acquire other property, contrary to the expressed will of the state embodied in an act of the legislature.

The privilege of continuing in the business of insurance within the state, in the case of the complainant companies, is derived from the legislation of the state, and it is for the legislature to determine, from time to time, upon what terms, and subject to what conditions, such privilege will be continued to the companies. The general subject of the power of the state to wholly exclude foreign corporations from carrying on business therein, or to impose terms, conditions, and restrictions upon the privilege was fully considered by the supreme court in Paul v. Virginia, 8 Wall. 168, and in Ducat v. Chicago, 10 Wall. 410, it being said in the former case that:

"Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may

exclude the foreign corporation entirely; they may restrict its business to particular localities; or they may exact such security for the performance of its contracts with their citizens as, in their judgment, will best promote the public interest. The whole matter rests in their discretion."

It is said in argument that these decisions were rendered before the adoption of the fourteenth amendment and the enactment of the civil rights act, and that these enactments require a change in the view taken therein of the control of the state over the admission of foreign corporations, but in Pembina Con. Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, the court considered the effect of the fourteenth amendment on the question, and ruled that it made no change in the power of the state, it being said in conclusion that:

"The only limitation upon this power of the state to exclude a foreign corporation from doing business within its limits, or hiring offices for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign."

The decision in Doyle v. Insurance Co., 94 U. S. 535, is conclusive upon the point that the state, by admitting a corporation, does not lose the right to subsequently terminate such license. After citing the cases establishing the doctrine that the state may impose any terms and burdens it deems best as a condition of entering the state for the transaction of business, it is then held that:

. "The correlative power to revoke or recall a permission is a necessary consequence of the main power. A mere license by a state is always revokable. Christ Church v. Philadelphia, 24 How. 300; People v. Roper, 35 N. Y. 629; People v. Tax Com'rs of New York City, 47 N. Y. 501. The power to revoke can only be restrained, if at all, by an explicit contract upon good consideration to that effect. Humphrey v. Pegues, 16 Wall. 244; Tomlinson v. Jessup, 15 Wall. 454. A license to a foreign corporation to enter a state does not involve a permanent right to remain."

An examination of the statutes of the state of Iowa shows that for years it has been incumbent upon all foreign insurance companies to obtain a renewal in each year of their license to continue in business in the state, and, unless such license in the form of a certificate was issued, the company had no right to continue the transaction of insurance within the state. The ground of complaint in the present instance is that the state has imposed certain conditions as a prerequisite to the issuance of a license enabling the companies to continue in business during the coming year, and these conditions are complained of as onerous, and as making a discrimination between the license tax exacted from corporations created under the laws of other nations, as compared with domestic or sister state corporations. In Pembina Con. Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, it is expressly held that "the state is not prohibited from discriminating in the privileges it may grant to foreign corporations as a condition of their doing business or hiring offices within its limits"; and if it be true—as it undoubtedly is—that the state may impose such conditions as it deems best upon the privilege of obtaining a license to

do business in the state during the coming year, the courts cannot release the companies from the obligation to perform the conditions, if they wish to continue in business during the coming year. If the conditions imposed are onerous, discriminatory, or otherwise inexpedient, relief must come from the legislature, and not from the courts. The argument for complainants is largely based upon the thought that, when foreign corporations are once admitted within the state, they are entitled, under the provisions of the state and federal constitutions, to insist that they shall be subjected to the same burdens of taxation as may be imposed upon similar corporations engaged in the like business. If the license tax provided for in section 1333 was a tax upon property, real or personal, owned by the companies within the state, there would be much force in the argument; but that is not the fact. This license tax is the condition imposed by the state upon the privilege of engaging or continuing in business within the state. It is optional with the companies whether they will subject themselves to the burden or not, but they cannot enjoy the privilege of continuing in business in the state, except upon compliance with the terms which the state has seen fit to impose as a condition to the exercise of the privilege. In the adoption of section 1333 the state was not exercising its right to subject property or persons within the state to a proper burden of taxation, in which event it would have been subject to the provisions of the state constitution requiring equality in the burdens imposed; but the state was exercising its undoubted right to prescribe the terms upon which foreign corporations may be allowed to continue in the business of insurance within the state, and, as the right to impose terms is possessed by the state, it is not for the courts to question the expediency or justice of the conditions enacted by the state.

From these considerations it appears that the bill demurred to fails to show any ground authorizing the court to grant relief in any form to the complainants, and it necessarily follows that the demurrer must be sustained, and the bill be dismissed, at cost of complainants.