WEBB MCNALL v. THE METROPOLITAN LIFE INSURANCE COMPANY.

No. 12,976.   (70 Pac. 604.)

SYLLABUS BY THE COURT.

INSURANCE COMPANIES—*Two-per-cent. Tax—Act of 1898 Construed.* Under the provisions of chapter 25, Laws of 1898 (Gen. Stat. 1901, §§ 3585–3588), which act went into effect January 11, 1899, the superintendent of insurance collected a two-per-cent. tax, based on the amount of premiums received on business done in this state by a foreign insurance company in the year 1898. *Held,* that the collection of the tax was authorized by the law as a condition precedent to the right of the company to transact business here after January 15, 1899.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed November 8, 1902. Reversed.

STATEMENT.

AT a special session of the legislature, held in 1898, the following act was passed (Laws 1898, ch. 25; Gen. Stat. 1901, §§ 3585–3588 ) :

"AN ACT to provide for the taxation of insurance, guaranty and accident companies not organized under the laws of the state of Kansas.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. Every insurance, guaranty and accident company or association not organized under the laws of this state shall, as hereinafter provided, annually pay a state tax upon all premiums received,

whether in cash or in notes, in this state, or on account of business done in this state, for insurance of life, property or interests in this state, or guaranty companies, at the rate of two per cent. per annum, which amount of tax shall be assessed by the superintendent of the insurance department, as hereinafter provided.

"SEC. 2. Every such company or association shall, on or before the 15th day of January in each year, make a return, verified by the affidavit of its president and secretary or other chief officers, to the superintendent of the insurance department, stating the amount of all premiums received by said company, whether in cash or notes, in this state, during the year ending on the 31st day of December next preceding. Upon receipt of such returns, the superintendent of the insurance department shall verify the same, and assess the taxes upon the various companies on the basis and at the rate provided for in section 1 of this act, and proceed to collect the same from the insurance companies and cover the same into the state treasury.

"SEC. 3. Every insurance, guaranty and accident company or association organized under the laws of any foreign country shall, as hereinafter provided, annually pay a state tax upon all premiums received, whether in cash or in notes, in this state, or on account of business done in this state, for insurance of life, property or interests in this state, or guaranty companies, at the rate of four per cent. per annum, which amount of tax shall be assessed by the superintendent of the insurance department as hereinafter provided.

SEC. 4. The superintendent of insurance is hereby empowered to revoke the license of any insurance, guaranty or accident company or association that shall fail to comply with the above requirements for a period of thirty days after January 15 in each year.

"SEC. 5. This act shall take effect and be in force from and after its publication in the official state paper.

"Approved January 3, 1899.

"Published in official state paper January 11, 1899."

Pursuant to this law, Webb McNall, then superintendent of insurance, on January 31, 1899, wrote to the secretary of the defendant in error as follows:

"DEAR SIR—I have this day received your annual statement for the year ending December 31, 1898, but no duplicate, as required by this department. You will please send duplicate.

"I notice from your sworn report that the gross premiums collected in Kansas by your company for the year 1898 amount to $65,321.33. Under a law recently passed in this state, a copy of which is herewith, sent you, there is imposed on the gross premiums collected by companies not organized under the laws of this state, from this state, a direct tax of two per cent., which requires you to pay to this department, before the 15th day of February, the sum of $1306.43. I herewith send you bill for these taxes, as well as for your annual fees, which you will please give your prompt attention."

Later the insurance company paid the amount of taxes demanded by the superintendent of insurance under protest, being moved to do so by the threat that unless paid the license of the company to transact insurance business in this state would be revoked. This was an action to recover back from plaintiff in error the amount of the tax so paid. The insurance company had judgment in the court below.

*Webb McNall, A. B. Quinton,* and *E. S. Quinton,* for plaintiff in error.

*Waggener, Horton & Orr,* and *D. H. Martin,* for defendant in error.

The opinion of the court was delivered by

SMITH, J. : It is insisted by counsel for defendant in error that the law set forth in the statement was given retroactive effect by the collection, under its authority,

of taxes from the insurance company for the year 1899, based on business done in 1898, and that, in fact, the tax was on insurance written before the law was passed.   With this contention we do not agree.

Section 4 empowers the superintendent of insurance to revoke the license of any company that shall fail to comply with the requirements of the law for thirty days after January 15.   As we interpret the act, it has for its purpose the annual collection of a two-per-cent. tax on the amount of business done in this state by foreign insurance companies as a condition to their right to continue to transact business here.   With this object in view, section 2 of the law, which re-quires a sworn statement to be made by such com-panies of the amount of all premiums received in the state during the year ending December 31 preceding, was inserted to cover cases like the present, when the company had been doing business in this state before the passage of the act.   While it is a principle of statutory construction that laws are to be so inter-preted as to give them a prospective rather than a re-troactive effect, this rule is not infringed by sustaining the method employed, which the law authorizes, of ascertaining the amount of tax to be paid by comput-ing it from the volume of business done in the pre-ceding year by the company sought to be charged.

The penalty prescribed for the failure on the part of a foreign insurance company to pay the tax is that the superintendent of insurance shall revoke its license to transact business.   In this case, if the interpreta-tion put on the law by the insurance company is the correct one, it might have continued to carry on its business here throughout the year 1899, to January 15, 1900, without the payment of this tax, and, on the last date, have withdrawn from the state, and the su-

perintendent would have been powerless to coerce payment of the amount due. The tax collected ih 1899 was not levied on business done in the previous year. The amount of the premiums collected during the year before was used as a basis for determining the amount the company ought to pay for the privilege of writing insurance in this state for the subsequent year.

Counsel complain that the law is unjust. The regulation of the right of foreign insurance companies to transact business in this state is admittedly within the power of the legislature, and, in our opinion, nothing more was sought to be done by the passage of the law in question than to make the payment of this tax a condition precedent to the right of the company to transact an insurance business here after January 15, 1899.

The judgment of the court below will be reversed and a new trial ordered.

All the Justices concurring.