STATE OF IOWA ex rel. JOHN H. MITCHELL, Attorney General, Plaintiff, Appellant, v. NATIONAL LIFE INSURANCE COMPANY, Defendant, Appellee, STATE OF IOWA et al., Claimants, Appellants, PATRICK J. LUCEY, Receiver for National Life Insurance Company, Intervenor, Appellee.

No. 44025.

1302

SEPTEMBER 21, 1937.

REHEARING DENIED JANUARY 21, 1938.

John H. Mitchell, Attorney General, Don W. Burington, Asst. Attorney General, and Lehan T. Ryan, Spec. Asst. Attorney General, for claimants, appellants.

Bennett & Shoup and Concannon, Dillon, Bostelman & Snook, for intervenor, appellee.

HAMILTON, C. J.—The statute, chapter 335 of the Code of 1935, section 7022, imposes a specific tax upon premiums received on business done in this state by a foreign insurance company, which tax is made payable at the time of making the annual statement required by section 8728 of the Code, which annual statement is required by said statute to be filed annually by the first of March with the insurance commissioner, covering its affairs for the year terminating on the 31st of December, preceding. Section 8657 provides that upon receipt of said annual statement and evidence of investment of foreign companies, all of which shall be renewed annually by the first day of March, the commissioner of insurance shall issue a certificate authorizing the company to transact business in this state for the ensuing year. This certificate shall expire on the 1st day of April of the ensuing year or sooner upon notice by the commissioner. Section 7023 of the Code provides that the commissioner of insurance shall not issue the annual certificate unless a receipt is presented showing payment of the tax computed on the premiums received on business in Iowa for the previous year.

1304

The appellee company is a foreign company, incorporated under the laws of the state of Illinois in the year 1904. During the month of March, 1904, the company was admitted to do business in Iowa as a foreign corporation. A certificate was issued by the commissioner of insurance permitting the company as a foreign company to engage in the insurance business in this state. No tax was paid at that time. In 1905 the company paid premium taxes in Iowa based upon premiums received by it in Iowa in 1904. In 1906 the company paid premium taxes in Iowa based on premiums received in Iowa in 1905, and so on in the succeeding years until the year 1933, when the company paid to the state of Iowa the sum of $7,123.29 as premium taxes, which taxes were computed on the basis of premiums received in Iowa during the calendar year 1932.

Proceedings for dissolution and liquidation of said company were instituted in Cook County, Illinois, wherein the defendant, Patrick J. Lucey, was appointed principal receiver of said insurance company on October 17, 1933. Equitable proceedings were begun in the district court of Polk County, Iowa, and on October 18, 1933, E. W. Clark, the then insurance commissioner of the state, was appointed ancillary receiver for said National Life Insurance Company within the state of Iowa. On April 4, 1934, Patrick J. Lucey, the principal receiver, intervened in the Polk County district court proceeding and obtained an order of court which directed the surrender to him of the assets of the corporation within this state and resulted in the discharge of the local receiver. The claim of the state was then pending and Lucey also filed objections to the allowance of said claim. In this decree jurisdiction was reserved for the purpose of determining the validity and amount of the claim of the state of Iowa for premium taxes and the question as to whether there existed preference therefor. The amount of the claim is not in dispute. The claim is based on the amount of premiums received from the 1st of January, 1933, to October 17, 1933, when the company was placed in the hands of a receiver and restrained from transacting further business. Hearing was had upon the claim in equity in the Polk County district court and on March 19, 1937, the trial court sustained the objections to said claim made by the said principal receiver and denied and disallowed the claim in toto, from which order the state through its proper officials has appealed.

Since the objections were sustained generally, it will be necessary to give consideration to each of them. Summarized, the grounds of the objections are (a) that the premium tax imposed by section 7022 of the Code of Iowa, 1935, is payable in advance for the privilege of doing business the succeeding year, and since the National Life had already paid for this privilege to do business through March 31, 1934, no further tax could accrue as against the receivership appointed on October 17, 1933; (b) section 7022 and section 7023 provide an exclusive method for the collection of the tax, namely, withholding of the certificate, and this action cannot be maintained; (c) there was no debt due on October 17, 1933, the date of the liquidation order, and under the Illinois law, rights of creditors became fixed as of date of the entry of the order of liquidation; (d) the company paid the premium tax due March 1, 1933, and became entitled to a certificate of authority authorizing it to transact business the succeeding year, the state of Iowa refused to issue such certificate and accordingly cannot recover the tax; (e) in no event is the state entitled to recover interest.

On the other hand, the state contends that there is no basis in any of the objections to sustain the court's order. Reduced to its last analysis, the first proposition is: The company having paid the state the sum of $7,123.29 in March, 1933, being 2½ per cent of the amount of premiums received by it for business done in the state of Iowa for the preceding calendar year of 1932, was it entitled to do business in the state of Iowa during the calendar year 1933, up to the time of its dissolution, and pay no taxes on premiums received on Iowa business during such period? On this proposition it is the contention of the state that the tax is imposed for the privilege of doing business in this state, and the amount of the tax for any given year is to be determined by the amount of premiums received on business done in the state for that year, and necessarily this cannot be determined until the end of the year; that any other construction of the law would result in granting an exemption from taxation on one year's business.

Section 8643 of the Code provides that every life insurance company upon the level premium or the natural premium plan created under the laws of this or any other state or country shall before issuing policies in the state comply with the provisions of chapter 398 (section 8643 et seq.), applicable to such companies.

Section 8652 of this chapter provides that no company incorporated by or organized under the laws of any other state or government shall transact business in this state unless it is possessed of the actual amount of the capital required of any company organized by the laws of this state. (The section makes further provision for furnishing evidence of value of capital.) Section 8653 provides for the annual statement of the affairs of the company which must be filed by the 1st of March each year, and must include among other things "the amount of premiums received in this state during the year." Section 8657 provides that on receipt of such statement and evidence of investment of foreign companies, the commissioner of insurance shall issue a certificate setting forth the corporate name of the company, its home office, and that it has first complied with the laws of this state and is authorized to transact the business of life insurance for the ensuing year. Under chapter 335 relating to taxation of insurance companies are found the pertinent tax provisions applicable to this case.

"7022. Foreign companies—tax on gross premiums. Every insurance company incorporated under the laws of any state of the United States other than the state of Iowa, * * * shall, at the time of making the annual statements as required by law, pay into the state treasury as taxes two and one-half per cent of the gross amount of premiums received by it for business done in this state, * * * during the preceding year."

"7023. Receipts—certificate of authority. At the time of paying said taxes, said companies and associations shall take duplicate receipts therefor, one of which shall be filed with the commissioner of insurance, and upon filing of said receipt, and not till then, the commissioner of insurance shall issue the annual certificate as provided by law."

One of the cardinal rules of construction is that statutes should be construed so as to give force and effect to the manifest legislative intent as embodied therein. State v. City of Des Moines, 221 Iowa 642, 646, 266 N. W. 41, 43. In the cited case we said:

"In seeking to find the intent of the legislature, common sense and reason should prompt us to look for the object and purpose which the legislature had in mind and not to depend on

dogmatic terms of expression. * * * Having ascertained from a consideration of the entire act and historical background revealed by prior statutes on the same subject the object and purpose which the law was intended to accomplish, it is the duty of the court to give it force and effect, if this can be done without running counter to established legal precedents.''

■■■ The law imposes a tax for the privilege of engaging in or carrying on business in Iowa, and is an excise tax in the nature of a franchise or privilege tax, or tax on the privilege of doing business. In the sense that it requires payment of the tax as a condition precedent to renewal of the certificate it partakes of a license. Scottish Union & National Insurance Co. v. Herriott, 109 Iowa 606, 80 N. W. 665, 77 Am. St. Rep. 548. The amount of the tax is determined at the end of the year by taking the gross premiums for such year and imposing a tax of 2½ per cent thereon after allowing certain deductions.

■■■ A foreign insurance company has no absolute right to come into the state and do business in this state. The state may by statute extend to such companies the privilege or right to enter the state on such terms and conditions as it deems best.

■■■ In substance the state says to such companies, ''You may come in, but here is the statute, section 7022 of the Code. If you come into the state, the state will exact 2½ per cent tax upon all the premiums received on business written in this state. This will be payable at the end of the year, for until that time the total amount of premiums received during such year would not be ascertainable.'' That this is the plain intent and purpose of the legislature seems too clear for argument.

■■■ Appellee directs attention to the language of section 7023 of the Code, which provides that the annual certificate authorizing such insurance company to transact business within the state shall not be issued unless duplicate receipts showing payment of the taxes are on file with the commissioner of insurance, and places this statute as a stumbling block in the way of the state, claiming that this clearly indicates that the tax collected is for the privilege of doing business for the ensuing year. This is a strained construction and has not, and could have no application to the first year that a foreign insurance company is permitted to come into the state, for there would be no tax due at that time. Section 7023 is in the nature of a club behind the

1308

door, a sort of threat or penalty to induce the company to come through with the tax when ascertained, and the amount of the tax cannot be ascertained until after the year has ended. In other words, the tax is not imposed for the privilege of continuing in business, but for the privilege of engaging in business. The company when it came into this state knew that the law was on the statute books, and that it would be required to meet this burden, and that the state would demand at the end of the year for the privilege of doing business, the tax of 2½ per cent of the gross premiums received for that year. There isn't anything hard to understand or difficult of comprehension about it. To say that the legislature intended that the statute imposing the tax did not begin to operate until the company had been here twelve months is certainly a strained and labored construction of the simple words of the statute. Under appellee's theory, the company would be exempt from taxation on its first year's business. If the legislature intended to exempt the foreign insurance companies for one year to induce them to come into the state it would have been an easy matter to have said something about it.

The supreme court of the state of Michigan had this same question under consideration in the case of Gauss v. National Life Ins. Co. of the United States (the same company as the one involved in the instant case), 280 Mich. 344, 273 N. W. 592, 594. The same questions were raised by counsel in the Michigan case that were raised in the instant case, and the Michigan court on this phase of the matter said:

"The statute imposes a specific tax upon the gross premiums received by the insurance company each year and is levied at the close of the year, and its payment is compliance with the tax levy during such calendar year and not for the ensuing year."

The Michigan statute is almost identical with our own. The California court in construing a similar statute in the case of Carpenter v. Peoples Mut. Life Ins. Co., (Cal. App.) 65 P. (2d) 827, 829, on this phase of the matter stated:

"Such tax is for the privilege of doing business during the year in which the premiums were received by the insurance company." To the same effect, see People v. Metropolitan Surety Co., 158 App. Div. 647, 144 N. Y. S. 201.

Counsel for appellee insists, however, that a study of the

past history of legislation on this subject will reveal that the tax is payable in advance. We have carefully gone into this matter and are not able to concur or agree with counsel in the conclusions drawn. As far back as the Code of 1851, we find a statute dealing with this subject in the following language: "Insurance companies of every description, except mutual insurance companies, existing in other states and operating in this, shall be taxed one per cent for county purposes and one per cent for state purposes upon the amount of the premiums taken by them during the year previous to the listing, in the county where the agent conducts that business; and the agent shall render the list and shall be personally liable for the tax, and if he refuses to render the list or to swear as herein required the amount may be assessed according to the best knowledge and the discretion of the assessor." Section 464. This law was carried over into the revision of 1860 in identically the same language, and appears as section 718 of the Revised Statutes of Iowa, 1860. In 1868 the legislature of Iowa repealed section 718 and passed another act entitled "An Act to regulate insurance companies." The act repealing section 718 and enacting the new statute was approved April 7, 1868, and became effective July 4, 1868. See chapter 138, Laws of the 12th General Assembly. By section 20 of this act it is provided that insurance companies shall file on the 1st day of January of each year, or within 30 days thereafter, an annual statement, showing among other things the premium income received the preceding year. Section 38 of the act then provides as follows:

"Sec. 38. Section seven hundred and eighteen of the Revision of 1860, and all acts and parts of acts amendatory thereto in relation to taxing insurance companies in this State, are hereby repealed; and it is enacted, in lieu thereof, the following, to-wit: Every insurance company doing business in this State shall at the time of making the annual statement, as provided in section twenty of this act, pay into the State treasury, as taxes, two per cent of the premiums on risks in this State taken during the preceding year, taking duplicate receipts therefor, one of which shall be filed with the Auditor of State, and upon the filing of said receipt, and not till then, the said Auditor shall issue the annual certificate as provided in this act, and the said sum of two per cent shall be in full for all taxes upon the corporation or

its shares under the laws of this State, except taxes on real property: Provided, however, that the provisions of this section shall not apply until the statement shall be required for January, 1869.''

It will be noticed that the wording of this section is very similar to sections 7022 and 7023 of the present code. Counsel calls especial attention to the proviso contained in the last three lines of said section 38 of this act, which states that the provisions of this section shall not apply until the statement shall be required for January, 1869. In construing these statutes together, which it is proper to do, counsel make the following deductions: That inasmuch as the old law, section 718 above, was a tax on property and was assessed and levied for the current year, and had for its basis the premiums received during the previous year, in the year 1868 when this law was changed, the change becoming effective July 4, 1868, taking into consideration the aforesaid proviso in section 38 of the new act, the legislature must have intended the old law to apply, and the assessment to be made according to that law for the current year 1868, contending that the proviso effectively prohibited the application of the new statute until the year 1869. This is based on the reasoning that the provisions of section 38 can under no circumstances be accorded a retroactive or retrospective effect. Citing Magee v. Commissioner of Corporations and Taxation, 256 Mass. 512, 153 N. E. 1; Thomas v. Disbrow, 208 Iowa 873, 224 N. W. 36; In re Estate of Culbertson, 204 Iowa 473, 215 N. W. 761, to the effect that a retroactive effect cannot be given to a taxing statute unless expressly so provided or clearly implied.

We have no quarrel to find with this rule of construction. As we examine these statutes and the purpose which the legislature had in mind in enacting the new statute, we think it must be said that it is clearly implied that the new law was intended to cover premiums received in the year 1868, which would be shown in the statement required to be filed for January, 1869. The old law was repealed and this repeal became effective before any levy could be made under the old law. Under section 718, the assessor would assess the company in the spring of 1868, taking as a basis the amount of premiums received during the year 1867. He would make his report to the board of supervisors, and the board at its regular meeting in June would levy the taxes

for the current year. (See section 746, Code 1860.) The taxes so levied would be payable as other taxes. At that time taxes were payable between the second Monday in November and the first day of February following. (Section 751, Code 1860.) Hence, if we adopt appellee's theory, the insurance company would be paying taxes between November, 1868, and February, 1869, and then when it files its statement January 1, 1869, under the new law it would again be required to pay taxes based on the amount of premiums received during the previous year of 1868 as shown by this statement. For there is no possible construction you can place on the aforesaid proviso that will exempt the company from accompanying its statement of January 1, 1869, with the payment of the tax, and that tax would be based on the premiums received in 1868, and the plain implication of this statute is that the taxes thus paid upon filing the statement of January, 1869, would take the place of the assessment and levy under the old law for the year 1868. So that the tax paid with the annual statement was for taxes on business done in 1868. Any other construction would result in there being no taxes paid on the business of that year. Thus, by what we believe is a proper analysis of the statutes we arrive at a conclusion exactly opposite to that of appellee.

■■■ Neither are we disposed to follow literally the language of the attorney general's opinion of January 21, 1898, relied upon by appellee, namely, that "the payment of the tax is a condition precedent to a foreign corporation obtaining any recognition under the laws of this state." The state did allow this foreign company to come into the state and engage in business for a whole year before payment of any tax was required. In the instant case the year had not expired at the time the company ceased doing business, but any further right of the company to transact business was definitely terminated by the order of liquidation and appointment of the receiver, and the state would be entitled to figure the tax on the amount of premiums received up to the date of the order of liquidation.

We find nothing in the attorney general's opinion referred to, nor in the case of Manchester Fire Ins. Co. v. Herriott, (C. C.) 91 Fed. 711, which furnishes a precedent binding on this court contrary to the conclusion we have arrived at in this case. In the latter case there is some language by way of dictum which does support the appellee's theory. In that case the insurance

company sought to enjoin and restrain the state treasurer from seeking to collect the tax by distraint upon their property or by suit to recover the amount of the tax. Judge Shiras points out in his opinion that the parties had stipulated to the effect that the allegations of the complaint with respect to any proposed action on the part of the defendants should be construed to mean only that the defendant would take such action in the premises and none other, as was commanded by the laws of the state of Iowa. The court held that there was no statutory provision for collecting the tax, and hence the threat was without substance, and therefore denied the injunction. Discussion of other matters in the opinion is in the nature of dictum.

■■■ Appellee's second objection is that sections 7022 and 7023 provide an exclusive method for collection of the tax and that method must be followed. This is rather inconsistent with the holding of the court in the cases cited in support of the first proposition. In both the Manchester Fire Ins. Co. case and the Scottish Union & Nat. Ins. Co. case, supra, the court held that there was no statutory provision for collecting the tax. We have searched carefully the language of these two sections, and we are unable to find any method or mode prescribed for collecting the tax. Of course, if there is a statutory method especially provided for collecting a special tax, that method must be followed, but in the absence of such statutory method, the common law right and the right which inheres in the sovereign state to enforce collection of taxes to maintain ·and carry on the government would certainly apply.

■■■ The wording of the statute in the instant case is: "* * * shall * * * pay into the state treasury as taxes two and one-half per cent of the gross amount of premiums received by it for business done in this state * * *." This is a sufficient basis to support a claim against the receivership and the property and assets of the company *in custodia legis.*

■■■ The withholding of the certificate for nonpayment of the tax is not a method of collecting the tax, but is a penalty imposed. State v. Acacia Mut. Life Ins. Co., 214 Ala. 628, 108 So. 756; Pinnacle Gold Mining Co. v. People, 58 Colo. 86, 143 P. 837. The Supreme Court of the United States in the case of United States v. Chamberlin, 219 U. S. 250, 31 S. Ct. 155, 160, 55 L. Ed. 204, 205, in an opinion by Justice Hughes, in discussing the question of the right of the United States to recover the

amount of a stamp tax in a common law action, speaking of penalties contained in the law, said: "But these penalties were provided in order to induce the payment of the tax, and not as a substitute for payment." See, also, State v. Georgia Co., 112 N. C. 34, 17 S. E. 10, 19 L. R. A. 485.

█▌█ Neither is the collection of the tax dependent upon the issuance of a certificate. Under the law, section 8728, foreign insurance companies are required between January 1 and March 1 of each year to make and file what is referred to as "a statement of its affairs" for the year terminating on the 31st of December preceding. By section 7022 the tax is due and payable at the time this statement is filed, that is, not later than March 1st. Whereas, the date of renewing the certificate is April 1st. The old certificate did not expire until April 1st. Section 8657. Suppose this company had not gone into receivership, but had continued to do business up to January 1, 1934, and made and filed its annual statement on that date, showing a condition which the department of insurance of this state was unwilling to recognize as sufficient to warrant a renewal of its certificate; would this defeat the right of the state to collect the tax due on business done in 1933? We unhesitatingly answer in the negative. The tax is imposed for the privilege of engaging in business, and the company had under the assumed facts engaged in business for 1933. Therefore it owed the statutory tax. The tax is not payable in advance as a condition precedent to engaging in business; but unless it pays the tax on the business done the previous year, a new certificate for the ensuing year will not be issued. But the withholding of the certificate does not satisfy the claim for taxes. All of the statutory provisions pertaining to this matter must be considered together. It will not do to single out section 7023 and argue from this alone that the payment of the tax is a condition precedent to issuing a certificate to engage in business. No tax was or could be exacted in March, 1904, when this company obtained its first certificate authorizing it to engage in business in this state. If this were a mere license fee, of course the state could not collect the fee, and then refuse the license or certificate. But such is not the case before us. This is primarily a revenue measure and brings into the state treasury over a million dollars annually. The statute in the instant case fixes the amount of the tax. No levy or assessment additional to this is necessary. It is a mere matter of computation.

■■■ On the question of preference there can be no controversy. The general policy of this state in the settlement of estates of decedents or in receivership matters is to prefer taxes over other claims. See section 12719 of the Code of Iowa. See, also, Gauss v. National Life Ins. Co. of the U. S., 280 Mich. 344, 273 N. W. 592.

■■■ There is no merit in appellee's contention that the Illinois court and the laws of Illinois were controlling. As stated in the Michigan case, supra, ''The receiver appointed in Illinois had no extraterritorial jurisdiction. The Michigan court had power to appoint an ancillary receiver, there being property of the corporation in this state, and the state having a claim for taxes.'' This same right exists under the statutes of Iowa. Sections 8660, 8661, 8662, Code of 1935. As a matter of comity between states, the Iowa court permitted the Illinois receiver to take charge of the assets of the company in this state and remove the same and discharged the ancillary receiver, but in the order it is provided:

''It further appearing to the court that the State of Iowa has filed claim herein for $5,481.82 for taxes on premiums collected by the National Life from its Iowa business up to and including October 18, 1933, and further claims preference for payment thereof. It is ordered that if upon the hearing of said claim it shall be concluded that such claim shall be allowed or that such claim is entitled to preference, then in such event the same judgment shall be entered against Patrick J. Lucey as receiver of the National Life Insurance Company of the United States of America, as might have been entered against E. W. Clark as Ancillary Receiver herein such to have the same force and effect as if the Ancillary Receiver herein had not been discharged and such judgment had been entered against said Ancillary Receiver, and this court hereby retains jurisdiction of said intervening petition to determine the validity and amendment of said claim of the State of Iowa, and whether it is entitled to any preference for the payment thereof, and for the purpose of entering a proper order or judgment upon such determination, but said Patrick J. Lucey shall have all rights of defense and review which the Ancillary Receiver would have had, to all of which the said Patrick J. Lucey as receiver of the National Life now here in open court consents.''

 We find no basis in any of the objections urged to sustain the trial court's decree. The claim should have been allowed as a preferred claim without interest. On the right to exact interest, see Leach v. Bank, 210 Iowa 613, 231 N. W. 497, 69 A. L. R. 1206; Thomas v. Western Car Co., 149 U. S. 95, 13 S. Ct. 824, 37 L. Ed. 663. The decree of the trial court is accordingly reversed and the cause remanded with instructions to enter a decree in harmony with this opinion.—Reversed and remanded with instructions.

KINTZINGER, DONEGAN, PARSONS, MITCHELL, ANDERSON, and SAGER, JJ., concur.