No. 34,696

The Pacific Mutual Life Insurance Company, *Plaintiff*, v. Charles F. Hobbs, as Commissioner of Insurance of the State of Kansas, and Walter E. Wilson, as Treasurer of the State of Kansas, *Defendants*.

(103 P. 2d 854)

Opinion filed July 6, 1940.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the plaintiff.

*Jay S. Parker,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Joseph Scott Payne,* special assistant attorney general, for the defendants.

The opinion of the court was delivered by

Allen, J.: This is an original proceeding in mandamus to compel the defendants as state officials to refund to plaintiff certain money which it is alleged was unlawfully assessed and paid under protest

to the defendant insurance commissioner and now held as a trust fund by the defendant state treasurer.

For a number of years prior to 1936 the Pacific Mutual Life Insurance Company of California (hereinafter referred to as the old company) was authorized to and did business in Kansas as a foreign life insurance company. On July 22, 1936, in a court of competent jurisdiction in California, the old company was found to be insolvent and ceased doing business. On the same date the insurance commissioner of California was appointed conservator of the company, and a decree was entered authorizing the reinsurance and assumption of all policies and policy obligations of the old company in a newly organized company called the Pacific Mutual Life Insurance Company (hereinafter referred to as the new company). Substantially all of the assets of the old company were transferred to the new company, plaintiff herein, and, with certain exceptions, all of the policy contracts of the old company were reinsured and assumed by the plaintiff company as of July 22, 1936. The plaintiff assumed and agreed to pay all taxes due from the old company to any state where the old company had transacted business.

The old company, between January 1 and May 1, 1936, paid a tax to the state of Kansas on premiums received in Kansas during the year 1935, and thereupon was duly authorized by a renewal certificate of authority from the commissioner of insurance of the state of Kansas to do business in Kansas for the year 1936, ending May 1, 1937. On August 6, 1936, the new company was granted a certificate of authority from the state of Kansas to do the identical business in Kansas the old company had been doing, which certificate of authority authorized the new company to do business in Kansas, beginning July 22, 1936, until May 1, 1937.

In 1937 the new company filed its annual statement as of December 31, 1936, and made application for renewal of its certificate of authority to do business in the state of Kansas from May 1, 1937, until May 1, 1938. The new company tendered a tax on premiums collected by it in Kansas from July 22, 1936, to December 31, 1936, but declined to tender a tax on premiums collected from January 1, 1936, to July 22, 1936, by the old company.

Before the defendant insurance commissioner would issue a renewal certificate of authority to the new company to do business from May 1, 1937, to May 1, 1938, he required the new company to pay a tax, including a tax upon the premiums collected by the

old company from January 1, 1936, to July 22, 1936. The tax upon these premiums collected by the old company between January 1, 1936, and July 22, 1936, paid under protest, is the sum which plaintiff company now contends should be returned.

Our statute, G. S. 1935, 40-252, provides that every insurance company doing business in this state shall pay to the commissioner of insurance "fees and taxes specified in the following schedules." Schedule B applies to insurance companies organized under the laws of another state. It sets forth a list of admission and of annual fees, and then provides:

"As a condition precedent to the issuance of the annual certificate of authority, provided in this code, every company organized under the laws of any other state of the United States or of any foreign country shall pay a tax upon all premiums received during the preceding year at the rate of two percentum per annum: *Provided, however,* In the computation of the gross premiums all such companies shall be entitled to deduct therefrom any premiums returned on account of cancellation and all premiums received for reinsurance from any other company authorized to do business in this state."

The final paragraph of the section reads:

"For the purposes of insuring the collection of the tax upon premiums as set out in subsection B hereof, every insurance company or association shall at the time it files its annual statement, as required by the provisions of section 40-225, make a return, verified by affidavits of its president and secretary or other chief officers, to the commissioner of insurance, stating the amount of all premiums received by the companies in this state, whether in cash or notes, during the year ending on the thirty-first day of December next preceding. Upon the receipt of such returns the commissioner of insurance shall verify the same and assess the taxes upon such companies or associations on the basis and at the rate provided herein and such taxes shall thereupon become due and payable."

Section 40-225, referred to in the foregoing paragraph, provides:

"Every insurance company or fraternal benefit society doing business in this state shall annually, on the first day of January or within sixty days thereafter, file with the commissioner of insurance a statement of its condition as of the preceding thirty-first day of December. . . ."

The language of the statute is plain and there is little room for construction. Every company organized under the laws of any other state "shall pay a tax upon all premiums received during the preceding year at the rate of two percentum per annum." At the time the annual statement is filed, the company is required to make a return, stating the amount of premiums received during the year ending on the 31st day of December next preceding. Thereupon the

commissioner of insurance shall assess the taxes upon the company "on the basis and at the rate provided herein and such taxes shall thereupon become due and payable." The tax must be paid as a condition precedent to the issuance of the annual certificate of authority provided in the code.

The legislature has power to levy and collect an excise or license tax on any business or occupation. (*City of Newton v. Atchison,* 31 Kan. 151, 1 Pac. 288.)

The tax imposed by the statute on foreign insurance companies is an excise tax in the nature of a franchise or privilege tax. It is a tax on the privilege of doing business in the state. It has been so held in this state (*McNall v. Insurance Co.,* 65 Kan. 694, 70 Pac. 604), and such is the concurrent voice of the authorities in other jurisdictions. (*State v. National Life Ins. Co.,* 223 Ia. 1301, 275 N. W. 26; *State, ex rel. Smrha, v. General American Life Ins. Co.,* 132 Neb. 520, 272 N. W. 555; *Carpenter v. Peoples Mut. Life Ins. Co.,* [Cal. App.] 65 P. 2d 827.)

The plaintiff company admits the tax provided for in the statute is an excise or privilege tax, but contends that it is a prospective tax; that the old company, when it paid the tax between January and May, 1936, based on the business done in 1935, was paying for the privilege of doing business in the state for the year 1936. It is claimed that the privilege of doing business in Kansas and collecting premiums from January 1, 1936, to July 22, of the same year, was paid for by the old company; that, therefore, there was no tax legally due from the old company to the state which was assumed by the plaintiff.

In support of these contentions plaintiff relies upon the Nebraska case, *State, ex rel. Smrha, v. General American Life Ins. Co.,* supra. In that case it was held that a tax upon the gross premiums of a nonresident insurance company for the year 1933 prior to the date on which its assets were acquired by another company was a prospective privilege tax for the year 1934 for the old company, and therefore the successor company could not be held liable therefor, nor denied the privilege of subsequently doing business within the state because of the failure to pay such tax. No authority is cited and no reason is advanced to sustain the conclusion.

In *Carpenter v. Peoples Mut. Life Ins. Co.,* 10 Cal. 2d 299, 74 P. 2d 508, the Smrha case was commented on by the supreme court of California as follows:

"A hearing was granted in this case upon petition of both appellant and respondent . . . mainly for the purpose of giving consideration to a recent case from another jurisdiction just decided. . . .

"The recent decision called to our attention is *State v. General American Life Ins. Co.*, 132 Neb. 520, 272 N. W. 555. It was therein held that the gross premiums tax on foreign insurance companies was not a property tax, but an excise tax upon their privilege of doing business in the state. In this respect the case is in complete accord with our own view, hereinabove expressed. The court further states that it is a 'prospective' tax, and 'it never became a valid obligation against the defendant, because the old company, which had failed and been taken over and sold by the superintendent of the insurance department of Missouri, never asked for the right to sell insurance in Nebraska for that year.' This conclusion is stated without any discussion, and we are unable to follow it here in view of the obvious purpose of our own constitutional and statutory provisions, namely, to tax the company for the privilege of doing business, and to impose that tax on the gross premiums received in such business. And there is no reason why a tax based upon business done during one year may not be levied and collected in the following year. Payment of the tax may precede the exercise of the privilege or it may follow it, depending upon what system the legislature chooses to provide; and where, as here, the tax is in proportion to the amount of business alone, it is both equitable and convenient that it be paid after the conclusion of the year in which the privilege is exercised. The choice of such a method is within the legislative discretion. (See *William A. Slater Mills v. Gilpatrick*, 97 Conn. 521 [117 Atl. 806]; *Commonwealth of Massachusetts v. Meehan*, [C. C. A.] 67 F. 2d 638.) The argument of the insurance commissioner would necessarily lead to a complete exemption of the company from taxation during the year 1932, in which it did a substantial business. Such an interpretation of the constitutional and statutory provisions is entirely unwarranted, and cannot be made where a more reasonable inference is possible. (See *People v. Metropolitan Surety Co.*, 158 App. Div. 647 [144 N. Y. Supp. 201].)"

In *Insurance Com'r v. Life Ins. Co.*, 280 Mich. 344, 272 N. W. 593, it appeared that the National Life Insurance Company that had been doing business in the state of Michigan became insolvent and a receiver was appointed October 17, 1933. The state of Michigan claimed a tax on the gross premiums collected in the state by the insurance company during the year 1933, prior to the time the receiver was appointed. The receiver contended that the premium tax imposed by the state of Michigan was in the nature of a license or franchise tax, "and is payable as a condition precedent to the privilege of transacting business in the state of Michigan for the ensuing year." These contentions were rejected by the court. The court stated: "The statute imposes the specific tax upon the gross premiums received by the insurance company each year and is levied at the close of the year, and its payment is compliance with the tax levy during such calendar year and not for the ensuing year."

In *State v. National Life Ins. Co.*, 223 Ia. 1301, 275 N. W. 26, the court was confronted with a similar question based upon a statute substantially the same as the Kansas statute. The contention was made the premium tax imposed by the insurance code of Iowa "is payable in advance for the privilege of doing business the succeeding year." The court said:

". . . This is a strained construction and has not, and could have no application to the first year that a foreign insurance company is permitted to come into the state, for there would be no tax due at that time. . . . The company, when it came into this state, knew that the law was on the statute books, and that it would be required to meet this burden, and that the state would demand at the end of the year for the privilege of doing business, the tax of 2½ percent of the gross premiums received for that year. There isn't anything hard to understand or difficult of comprehension about it. To say that the legislature intended that the statute imposing the tax did not begin to operate until the company had been here twelve months is certainly a strained and labored construction of the simple words of the statute. Under appellee's theory, the company would be exempt from taxation on its first year's business. If the legislature intended to exempt the foreign insurance companies for one year to induce them to come into the state it would have been an easy matter to have said something about it.

"The withholding of the certificate for nonpayment of the tax is not a method of collecting the tax, but is a penalty imposed. (*State v. Acacia Mut. Life Ins. Co.*, 214 Ala. 628, 108 So. 756; *Pinnacle Gold Mining Co. v. People*, 58 Colo. 86, 143 P. 837.) The supreme court of the United States in the case of *United States v. Chamberlin*, 219 U. S. 250, 31 S. Ct. 155, 160, 55 L. Ed. 204, 205, in an opinion by Justice Hughes, in discussing the question of the right of the United States to recover the amount of a stamp tax in a common-law action, speaking of penalties contained in the law, said: 'But these penalties were provided in order to induce the payment of the tax, and not as a substitute for payment.' (See, also, *State v. Georgia Co.*, 112 N. C. 34, 17 S. E. 10, 19 L. R. A. 485.)" (pp. 1307, 1308, 1312.)

As intimated above, we think the answer to this lawsuit is found in our statutes above quoted. For the purpose of insuring the collection of the tax imposed, the company is required to make a return (at the time it files its annual statement), stating the amount of all premiums received during the year ending on the 31st day of December next preceding. Upon the receipt of the return the commissioner of insurance is directed to assess the taxes "on the basis and ·at the rate provided herein." The tax is to be assessed upon "all premiums received during the preceding year" at the rate, etc. The tax is an excise or privilege tax. The company was given the privilege of doing business in the state. Upon what basis is the tax to be imposed? Obviously upon the volume of business

done during the previous year. On the first day of January or within sixty days thereafter, the company is required to make a return showing the business done during the previous year. The tax is on the privilege of doing business in the state; the tax is fixed at a percentage of premiums received during the preceding year. The payment of the tax follows the exercise of the privilege. The method selected appears to be both equitable and convenient.

Upon the theory advanced by the plaintiff a foreign company coming into the state would be exempt from taxation upon the business done in the first year, if it withdrew at the end of the first year. It is not to be presumed the legislature intended to exempt a foreign insurance company from taxation upon its first year's business.

In support of the suggestion that the tax is a prospective privilege tax, counsel rely on *McNall v. Insurance Co.*, supra. That case arose shortly after the original premium-tax statute was enacted. The insurance company had been doing business in the state before the law was passed. The vital question before the court was formulated in the first paragraph of the opinion, which reads:

"It is insisted by counsel for defendant in error that the law set forth in the statement was given retroactive effect by the collection, under its authority, of taxes from the insurance company for the year 1899, based on business done in 1898, and that, in fact, the tax was on insurance written before the law was passed. With this contention we do not agree." (p. 696.)

The argument of counsel, adverted to by the court, was that if the tax was collected it would be a tax on insurance written before the law was passed. The question whether the law was prospective or retroactive in its operation was germane to the issue before the court. In the present case we are not confronted with any question as to the retrospective operation of our statute. That decision was based on an unusual state of facts and the doctrine there announced is not to be extended. We do not think it is controlling in the present controversy. Substantially all of the assets of the old company were transferred to the new company. The new company agreed to pay all the taxes due from the old company. We know of no reason why it should not fulfill the obligations that it assumed.

The question of the return of the money paid under protest, representing the sum based on the retaliatory statute, by agreement of counsel, is no longer at issue. Comment on that question is unnecessary.

The motion of defendant to quash the writ is sustained.