## SISTERS OF CHARITY OF SAINT ELIZABETH, APPELLANT, v. MORRIS RAILROAD COMPANY, RESPONDENT.

Argued November 25, 1912—Decided April 24, 1913.

1. When in proceedings to condemn land by a corporation, the de-
   termination of its existence *de facto* results in the determination
   of a question such as the constitutionality of the act of incor-
   poration or the applicability of the act to the corporation whose
   existence is challenged, the court is not compelled to stay its
   hand because its decision incidentally involves the very right of
   the corporation to exist.
2. When in proceedings to condemn land by a corporation, its right
   to do so is challenged, and the facts are questioned or the infer-
   ences are disputable, the court ought not upon *certiorari* to settle
   either the facts or the inferences. The proceedings should be
   held until the legality of the corporation can be settled once for
   all upon an information by the attorney-general. The corpora-
   tion is entitled to take the verdict of a jury in *quo warranto,* and
   not to be exposed to the hazard of conflicting judgments in con-
   demnation proceedings against different landowners.

On error to the Supreme Court, whose opinion is reported in
53 *Vroom* 214.

For the appellant, *Robert H. McCarter* and *Kinsley Twin-
ing* (*Edward K. Mills* and *Arthur F. Egner* on the brief).

For the respondent, *Elmer King* and *Alan H. Strong.*

The opinion of the court was delivered by

SWAYZE, J. We agree with the result and the reasoning
of the Supreme Court, and would add nothing but for the
fact that an expression in the opinion seems to have been mis-

understood and given a meaning more extensive than is warranted when the opinion is read, in view of the facts of the case.

The learned judge who spoke for the Supreme Court said that it was settled by that court upon the motion to strike out reasons that the prosecutor (now the appellant) had no right to inquire into the legality of the corporate existence of the defendant. The opinion upon the motion to strike out added that it was enough that the corporation might be such *de jure* and was such *de facto*. This was the logical result of the decision of this court in *National Docks Railway Co.* v. *Central Railroad Co.,* 5 *Stew. Eq.* 755. It was held in that case that the Court of Chancery would not, on a motion for a preliminary injunction to restrain the National Docks Railway Company from constructing its railroad across the Central Railroad Company's land, inquire into the *de jure* existence of the former company as long as it had complied with all formal requirements and was a corporation *de facto*. The decision was put upon the ground that there was no jurisdiction in the Court of Chancery to determine the legality of the existence of such a corporation.

The decision is not, however, authority for the broad proposition that the court will never, upon proceedings to condemn land, inquire into the legality of the corporation that seeks to condemn. We had already decided that the landowner was entitled to question the right to take his land without his consent (*State, Morris and Essex Railroad Co.,* v. *Hudson Tunnel Railroad Co.,* 9 *Vroom* 548), notwithstanding a contrary view expressed in the Supreme Court. 9 *Id.* 17. The right to inquire into the existence of the corporation *de facto* was conceded in the National Docks case as it was by the Supreme Court in the present case, and we in fact determined the constitutionality of the General Railroad law under which the National Docks Company had been organized. This was necessary and proper in order to determine whether it was a corporation *de facto,* for if there was no law under which such a corporation could exist, the attempt to

build across the Central railroad property and to condemn the right so to do would· be a mere usurpation. The court, however, went further and passed upon the question whether the General Railroad law authorized the construction of a railroad lying wholly within one city. Apparently if the court had construed the act adversely to the National Docks railroad, it would have retained the injunction. In one sense this inquiry involved only the *de facto* existence of the railroad, since it might well be said that it was an inquiry whether there was any statute under which a railroad of the character of the National Docks railway could exist; but the inquiry, if determined adversely to the railroad, would determine also its *de jure* existence.

It must often happen that a determination of corporate existence *de facto* involves necessarily the legal right to exist. In *De Camp* v. *Hibernia Railroad Co.*, 18 *Vroom* 43, the Supreme Court considered whether an underground railroad having one terminus on private property without any outlet in that direction, and authorized by its charter to carry freight only, was incorporated for a public purpose so that it might condemn land. In *Hampton* v. *Clinton,* 36 *Id.* 158, the Supreme Court held that a water company, under the act of 1876, which had not filed with its certificate the required consent in writing of the corporate authorities of the municipality, could not condemn land. In *Philadelphia and Camden Ferry Co.* v. *Intercity Railroad Co.*, 44 *Id.* 86, the same court considered the question whether the railroad proposed was wholly underground, a circumstance which, it was argued, would prevent incorporation under the General Railroad act; the court held that the fact was otherwise, but did not suggest that the question was not one that could be considered upon *certiorari* in condemnation proceedings. In the Hudson Tunnel Railroad Company case we said that the landowner asked no affirmative relief, but was purely on the defensive, resisting the claim of the defendant to appropriate the land for its uses and asking the court to say whether there was any authority to do so. Although the question involved in that

case did not go to the very existence of the tunnel company, the language of the eminent judge who spoke for this court is significant. There is no doubt that the *de facto* existence of the corporation may be inquired into at the instance of the owner whose lands it seeks to condemn. To hold otherwise would put it out of the power of the landowner to resist the invasion of his land, no matter how clear the usurpation might be. At the same time *certiorari* of the proceedings to condemn is not the proper remedy to oust the corporation of its assumed franchises. This was conceded in the Hudson Tunnel Railroad Company case. When, however, the inquiry into the right to condemn results in the determination of a question, such as the constitutionality of the act of incorporation or the applicability of the act to the corporation whose existence is challenged, we know of no rule which compels the court to stay its hand because its decision incidentally involves the very right of the corporation to exist. When the question involved is a purely legal question, or when the facts are clear and the inferences to be drawn therefrom are indisputable, no inconvenience can arise from having the court pass upon them. When, however, the facts are questioned or the inferences are disputable, the court ought not upon *certiorari* to settle either the facts or the inferences. The proceedings should be held until the legality of the corporation can be settled once for all upon an information by the attorney-general. *Terhune* v. *Potts,* 18 *Vroom* 218. The corporation whose existence is challenged is entitled to take the verdict of a jury in *quo warranto,* and not to be exposed to the hazard of conflicting judgments in condemnation proceedings against different landowners. The present case, like that of the National Docks Railway Company, is of this character. The organization of the railroad is regular on its face, the act has been declared constitutional, and the proposed railroad is of a character authorized by the act. Whether its organization was fraudulent or not depends upon disputable inferences to be drawn from the facts, and is a question to be decided on a *quo warranto* at the suit of the attorney-general.

It is said, however, that a corporation which merely exists *de facto* cannot exercise the power of eminent domain. The logical result, however, of the decision in the National Docks Railway Company case is, as we have said, to the contrary. If the landowner is not entitled to challenge by injunction the right of a corporation to invade his land, he certainly cannot be entitled to challenge it when the effort is to acquire his land by paying its value. If the view of the New York courts differs, we must be guided by our own decisions, but it is to be observed that the case cited from New York seems to have been one where the failure to comply with conditions precedent prevented even a *de facto* corporate existence. *In re New York Cable Co.* v. *City of New York,* 104 N. Y. 1.

That the court, however, may inquire whether an existing corporation is or is not acting in excess of its power is well settled. *Grey* v. *Greenville and Hudson Railroad Co.,* 14 *Dick. Ch. Rep.* 372; 15 *Id.* 154; 17 *Id.* 772; *Trenton Street Railway Co.* v. *United New Jersey Railroad and Canal Co.,* 15 *Id.* 500; *De Camp* v. *Hibernia Railroad Co.,* 18 *Vroom* 43; *Olmsted* v. *Proprietors of the Morris Aqueduct, Id.* 311.

Upon this point we need add nothing to what has been said by the Supreme Court upon the motion to strike out reasons. 53 *Vroom* 214.

The judgment is affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, MINTURN, BOGERT, VREDENBURGH, CONGDON, JJ.    8.

*For reversal*—WHITE, J.    1.