STATE, EX REL. CHARLES SMRHA, DIRECTOR OF THE DEPARTMENT OF INSURANCE OF THE STATE OF NEBRASKA, PLAINTIFF, V. GENERAL AMERICAN LIFE INSURANCE COMPANY, DEFENDANT.

272 N. W. 555

FILED APRIL 3, 1937. No. 30078.

*John S. Logan* and *Milton C. Murphy,* for plaintiff.

*Loren H. Laughlin, Allen May* and *John R. Griffiths,* for defendant.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

This is an original action, praying for a declaratory judgment and decree of this court adjudging $4,623.59, with interest, due as gross premium tax from defendant

to plaintiff, and also finding that plaintiff is authorized to refuse to issue a certificate of authority if defendant fails to pay said sum.

This original proceeding in this court is brought under authority of section 2, art. V of the Constitution as amended, giving this court jurisdiction in all cases relating to revenue. The action is alleged to be within the provisions of the uniform declaratory judgments act, as found in sections 20-21,140 to 20-21,155, inclusive, Comp. St. 1929.

The action was begun in this court on January 12, 1937, by the State of Nebraska, ex rel. Charles Smrha, director of the department of insurance, as plaintiff, filing an application for leave to file petition for declaratory judgment against General American Life Insurance Company, a corporation, defendant, and on February 19, 1937, said plaintiff filed an amended petition, and on February 23, 1937, the defendant filed a demurrer to such amended petition.

The amended petition alleges that the Missouri State Life Insurance Company, hereinafter referred to as the old company, was first licensed to do business in the state of Nebraska March 11, 1902, and thereafter, on or before March 1 in each year, made the annual statements required by law, and paid into the state treasury 2 per cent. of the gross amount of premiums received by it during the preceding calendar year for business done in Nebraska. The last date said gross premium tax was so paid by said old company was at the time of filing its annual report on March 1, 1933, which made annual statement for the full year 1932; that 2 per cent. of the gross premiums collected in Nebraska from January 1, 1933, to September 7, 1933, amounted to the sum of $4,623.59; that the superintendent of the insurance department of the state of Missouri, pursuant to an order of court, had taken over said old company and all of its assets, and on September 7, 1933, he had entered into a written contract and purchase agreement with the General American Life Insurance Company, defendant herein, by which said defendant company acquired title to

all of the assets of the old company, and said contract provided, as part of the consideration, that the defendant would assume and agree to pay all lawful taxes and debts due by the old company to the United States, the state of Missouri, and to all other states in which the old company did business; that the plaintiff herein has made repeated demands upon the defendant to pay said unpaid taxes upon the gross premiums collected, which taxes amounted to $4,623.59 with interest at 7 per cent. from March 1, 1934, and defendant denies liability therefor, either on the part of the old company or on the part of the defendant company under the assumption agreements, and denies that the plaintiff has any lawful right to revoke the authority of the defendant to do business in Nebraska by reason of the nonpayment thereof. The plaintiff alleges that it is charged by law with the enforcement of section 77-902, Comp. St. 1929, and that the defendant, in disregard of said section of the statute, has failed to pay the same, and plaintiff has notified defendant that, unless said taxes are paid prior to March 1, 1937, its certificate of authority will be revoked and said defendant will be prohibited from conducting any business of any kind in the state of Nebraska.

The amended petition further alleges that the defendant denies the authority of the director of the department of insurance to revoke said certificate of authority and prohibit the defendant to continue in business in Nebraska, and that defendant would suffer severe loss and injury by any attempt to exercise such power and authority on the part of the director of the department of insurance. It is further alleged that there is an actual controversy between the parties, and that the two justiciable issues presented are: (1) Whether said gross premium taxes, in the amount of $4,623.59, with interest at 7 per cent. from March 1, 1934, are now due and owing from defendant to plaintiff; (2) whether by reason of the failure of the defendant to pay said amount of taxes the director of plaintiff has the power and authority to revoke the certificate of authority of defendant company to continue in business in

Nebraska, and the plaintiff prays for a declaratory judgment of the supreme court determining the issues involved.

To this amended petition the defendant company files its demurrer, alleging that said amended petition does not state facts sufficient to constitute a cause of action for a declaratory judgment as prayed, and further alleging that the old company was not transacting business in Nebraska in 1934, and therefore was not required to make, and did not make, an annual statement required under said section 77-902, and that the tax of 2 per cent. of the gross amount of the premiums received by the old company up to September 7, 1933, which is sought to be imposed upon the defendant company by reason of its assumption of all lawful taxes due the state of Nebraska from the old company is unconstitutional, unlawful, and void as an attempt to collect a privilege or license tax for a privilege or license not asked or granted, and is an attempt to deprive the defendant company of its property without due process of law, contrary to section 3, art. I of the Constitution, and contrary to section 1 of the Fourteenth Amendment to the Constitution of the United States of America.

It is further set out in said demurrer that domestic life insurance companies, incorporated under the laws of the state of Nebraska under the provisions of section 77-904, Comp. St. 1929, were only required to pay four mills upon the gross premiums collected in the state during the preceding calendar year, less reinsurance paid on Nebraska business and dividends paid policyholders in Nebraska during that period, which taxes were in lieu of all other taxes upon intangible property, and the requirement under said section 77-902 that the defendant should pay 2 per cent. of the gross amount of premiums received by it during 1933 on business done in the state of Nebraska is unconstitutional, unlawful, and void, in that a tax is thereby imposed upon the defendant which tax is greater than that imposed upon similar domestic insurance corporations, and which tax is in lieu of other intangible taxes, and which therefore discriminates against this defendant in favor of

similar domestic insurance corporations, contrary to section 1, art. I, and section 1, art. VIII of the Constitution of Nebraska, and contrary to section 1 of the Fourteenth Amendment to the Constitution of the United States, and that therefore said section 77-902 is unconstitutional, unlawful and void.

We deemed it necessary to present this brief summary of the amended petition and the general demurrer thereto by defendant.

The plaintiff in this action is an executive department of the state of Nebraska, and section 20-21,141, Comp. St. 1929, provides that "any person" may have any legal question determined under the uniform declaratory judgments act. Does the plaintiff have a right to bring this action?

In *Moeller, McPherrin & Judd v. Smith*, 127 Neb. 424, 255 N. W. 551, it was held that "any taxpayer" who had an actual and justiciable controversy was entitled to have such controversy determined under this act, and the first proposition of law presented by the defendant is whether the legislature intended to include the state under the term "any person."

There are a multitude of cases on both sides of this proposition, and many cases hold that "person" in its legal and ordinary significations does not embrace a state. See the several editions of Words and Phrases under title "Person."

Many decisions hold that the term "person," as used in acts of congress touching internal revenue, does not include a state. But, in *Huffman v. State Roads Commission*, 152 Md. 566, 137 Atl. 358, it is said that the word "person" does not ordinarily include state, yet it may where such intention is manifest by the provision of the legislative act.

Section 20-21,151, Comp. St. 1929, reads as follows: "This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be literally (liberally) construed and administered."

Since the uniform declaratory judgments act gives power to this court to declare the rights, status and legal relations

of "any person" arising out of any contract in writing, or in construing the terms of a statute, ordinance, or franchise, in either the affirmative or negative form and effect, and bearing in mind that the act is to be liberally construed, then it seems to this court that, if the state itself or any department thereof has an actual and justiciable controversy with respect to its legal rights growing out of a revenue statute, then under section 20-21,141, Comp. St. 1929, the state is embraced under the expression "any person." See *Lynn v. Kearney County*, 121 Neb. 122, 236 N. W. 192, in which Justice Good reviewed briefly the history of the declaratory judgments act.

We will next consider: Is the question presented justiciable? We realize that test cases are often arranged where only information is sought on a pretended controversy, but courts look with disfavor on such moot cases. *Ex Parte Steele*, 162 Fed. 694; 31 Columbia Law Review, 561; *State v. Dunbar State Bank*, 119 Neb. 571, 230 N. W. 452; *Banning v. Marsh*, 124 Neb. 207, 245 N. W. 775. However, in the case at bar a concrete, contested issue is presented, where there is a definite assertion of certain legal rights and a positive denial thereof, and we find a condition of justiciability established. *Dobson v. Ocean Accident & Guarantee Corporation*, 124 Neb. 652, 247 N. W. 789.

The third, fourth and fifth propositions of law set out in the brief of defendant relate to the procedure under our declaratory judgments act, and whether the defendant may protect all its rights by filing only a general demurrer, as in this case, or should join issues with an answer.

In *Newsum v. Interstate Realty Co.*, 152 Tenn. 302, 278 S. W. 56, it was specifically held: "Proceedings under the declaratory judgments act are governed by applicable established rules of pleading."

In *School District of Omaha v. Gass*, 131 Neb. 312, 267 N. W. 528; the school district of the city of Omaha brought an original action against the members of the Nebraska state liquor control commission and other state officers, and the defendants filed a joint answer, admitting the al-

legations of the petition, and joined in the prayer of plaintiff that the court enter a declaratory judgment establishing the rights and status of the parties, and a judgment was entered for the defendants.

In *Arlington Oil Co. v. Hall,* 130 Neb. 674, 266 N. W. 583, being an original action for a declaratory judgment, the cause came on for hearing upon a motion to dismiss the petition, which was sustained. The court stated that, if a declaratory judgment would not terminate the controversy arising between the parties, it would dismiss the proceeding.

*Smithberger v. Banning,* 129 Neb. 651, 262 N. W. 492, was first heard upon demurrers to plaintiffs' and intervener's petitions, and the demurrers were overruled, and the defendants electing to plead no further, a judgment was thereupon entered in favor of the plaintiffs. The matter came before the court again in *Smithberger v. Banning,* 130 Neb. 354, 265 N. W. 10, upon the motion of defendants to dismiss the petitions of intervention, which motions were sustained.

In the case at bar, during the argument counsel were asked whether there was any agreement as to this court entering a final judgment disposing of this case, and it was agreed by the counsel that that was the understanding, and that a declaratory judgment should be entered which will terminate the controversy.

Section 77-902, Comp. St. 1929, was first enacted as section 59, ch. 73, Laws 1903, and became effective on September 1, 1903. The old company was first licensed to do business in Nebraska on March 11, 1902, and thereafter on the first day of March each year, up to and including March 1, 1933, it made its annual statement and paid into the treasury of the state of Nebraska the 2 per cent. of the gross premiums received by it during the preceding calendar year.

This law was discussed by Chief Justice Sullivan in the case of *State v. Fleming,* 70 Neb. 523, 97 N. W. 1063, in which it was said: "The question to be decided in these

cases is not whether particular provisions of chapter 73 of the laws of 1903 are valid or ideally just, but whether the act, considered as a whole, is a constitutional expression of the legislative will. Objection is specially urged against those sections of the act defining the manner in which insurance companies are to be taxed, and it is said that the law discriminates against the property of foreign insurance companies and in favor of domestic corporations of that character. Relating to the provisions of sections 59 and 60, it is plain that the tax of 2 per cent. upon the gross earnings of the companies mentioned in these sections is a tax imposed, not upon their property, but upon their privilege of doing business in this state. That the state may impose such conditions and limitations upon foreign corporations seeking the privilege of conducting their business in this state as it sees fit, is not a question open to discussion. Such companies have no authority to transact business in this state without the consent of the state, and, when they seek the privilege, they must comply with the conditions imposed. After coming here, their property must be dealt with on terms of equality with the property of the citizen. It is subject to no further burden in the way of taxation than is imposed upon the resident, but, for the privilege of doing business here, they must submit to such conditions as the legislature sees fit to impose. * * * The tax complained of is not in any sense a tax upon the property of these corporations, but a privilege tax and, as such, is wholly unobjectionable."

In *Aachen & Munich Fire Ins. Co. v. City of Omaha*, 72 Neb. 518, 101 N. W. 3, it was said: "A tax upon the gross amount of premiums received by a foreign fire insurance company during the preceding year * * * is not a tax upon property."

The 2 per cent. gross premium tax on foreign insurance companies transacting business in Nebraska, as provided in said section 77-902, Comp. St. 1929, is an excise tax on the privilege of doing business in the state of Nebraska. If this were not true, such taxes would be unconstitutional as

discriminatory and violative of the due process and equal rights clauses of both the state and federal Constitutions.

Having thus reached the conclusion that the tax sought to be collected by plaintiff is a prospective privilege tax for the year 1934, it never became a valid obligation against the defendant, because the old company, which had failed and been taken over and sold by the superintendent of the insurance department of Missouri, never asked for the right to sell insurance in Nebraska for that year.

We will now consider the question whether defendant, because of nonpayment of the $4,623.59 and interest, can be denied a certificate of authority to do business in Nebraska. This court has recently had a somewhat similar question before it in the case of *Continental Ins. Co. v. Smrha,* 131 Neb. 791, 270 N. W. 122, and it was there said: "The principal contention of the appellants, however, is that the inclusion in the act of the provision that 'no certificate shall be issued to any such company, authorizing it to do or continue in business in this state while any such tax remains due and unpaid' makes the tax a franchise or privilege tax, and that, as such, it meets constitutional requirements. It is the settled law that a state may, subject to constitutional restrictions, tax a foreign corporation for the privilege of doing business within the state. 61 C. J. 340."

The old company owed the money set out, and could not have received a certificate of authority to do business without paying the amount, but it did not file any annual report, and it neither sought nor obtained such authority, but we hold that the newly-incorporated company, the defendant herein, is not obligated to pay this privilege tax. To hold otherwise would give the statute unconstitutional aspects and impose a privilege tax where no privilege was asked or obtained.

The demurrer of the defendant is sustained, and judgment entered that the defendant is not indebted to the plaintiff in the sum of $4,623.59 with interest, or any part thereof, under section 77-902, Comp. St. 1929, and that the plaintiff, because of the nonpayment of said sum, is not

authorized to revoke the certificate of authority of the defendant to do business in the state of Nebraska, or to refuse on that ground alone to issue a new certificate of authority for the license year commencing April 1, 1937, providing defendant company makes all proper reports and pays the proper fees required by law.

DEMURRER SUSTAINED AND JUDGMENT ENTERED.