RANSFORD J. ABBOTT, STATE HIGHWAY COMMISSIONER . OF THE STATE OF NEW JERSEY, PLAINTIFF-RE-SPONDENT, v. BETH ISRAEL CEMETERY ASSOCIA-TION OF WOODBRIDGE, NEW JERSEY, A CORPORA-TION OF THE STATE OF NEW JERSEY FORMERLY KNOWN AS BETH ISRAEL CEMETERY ASSOCIATION, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued September 28, 1953—Decided November 16, 1953.

530

*Mr. Arthur S. Lane* argued the cause for the appellant (*Messrs. Minton, Dinsmore & Lane,* attorneys).

*Mr. Russell E. Watson* argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney-General of the State of New Jersey, attorney; *Mr. Morris M. Schnitzer,* of counsel; *Messrs. H. Roemer McPhee* and *C. John Stroumtsos,* on the brief).

The opinion of the court was delivered by

BURLING, J. This is an appeal from an order of the Superior Court, Law Division, dated April 29, 1953, denying the motion of the Beth Israel Cemetery Association of Woodbridge, New Jersey (hereinafter called the defendant), a New Jersey corporation, for dismissal of the complaint of Ransford J. Abbott, State Highway Commissioner of the State of New Jersey (hereinafter called the plaintiff), filed on January 12, 1953, under the Uniform Declaratory Judg-

ments Law. *N. J. S.* 2*A*:16–50 *et seq.* The appeal was addressed to the Superior Court, Appellate Division, under *Rule* 4:2–2(*a*), as amended December 7, 1950 and January 1, 1953, now *R. R.* 2:2–3(*a*), but was certified on our own motion prior to hearing there.

The matters alleged in the complaint begin chronologically in 1947, when the plaintiff's predecessor as State Highway Commissioner of the State of New Jersey authorized the acquisition of certain lands of the defendant for the construction of a newly authorized highway, designated as "Route 4 Parkway." The authority for the construction of this parkway was *L.* 1947, *c.* 328 (effective June 20, 1947), which provided that "The State Highway Commissioner shall, as soon as practicable, in accordance with the procedure set forth in article one, chapter seven, Title 27, of the Revised Statutes [*N. J. S. A.* 27:7–1 *et seq.*] add to the present State highway system" a route extending from the then existing Route 25 to the then existing Route 35, "all in Woodbridge township, Middlesex county." This new route (*L.* 1947, *c.* 328, *supra, sec.* 3) was "designated as a parkway, as defined in" *L.* 1945, *c.* 83 (see *N. J. S. A.* 27:7*A*–1 *et seq.*), which gave to the State Highway Commissioner additional powers with respect to any highway so designated by the Legislature as a parkway. It is asserted in the plaintiff's brief that "Route 4 Parkway" is now a portion of the highway known and designated as the "Garden State Parkway." The "Garden State Parkway" was authorized by *L.* 1952, *c.* 16, *sec.* 20 (*N. J. S. A.* 27:12*B*–20). The 1952 act provided that when the New Jersey Highway Authority (thereby created) "shall undertake to construct any part of the project described in section twenty hereof or shall acquire any portion of said State highway route as part of such project, the jurisdiction and authority of the (State Highway) Department over such part shall cease * * *." *L.* 1952, *c.* 16, *sec.* 21 (*N. J. S. A.* 27:12*B*–21). No party to the present suit has asserted that the plaintiff is thereby disqualified to maintain the action, nor that the New Jersey Highway Authority is a necessary party nor were there any

facts averred or submitted to the court from which inferences to that effect might be drawn. It is noted that *L.* 1952, *c.* 16, *sec.* 23 (*N. J. S. A.* 27:12B–23) provides that said act "shall be deemed to provide an additional and alternative method for the doing of the things authorized thereby, and shall be regarded as supplemental and additional to powers conferred by other laws, and shall not be regarded as in derogation of any powers now existing." We assume for the purposes of this appeal, without deciding the question (inasmuch as it has not been raised either on fact or on law), that the plaintiff's jurisdiction over the highway known as Route 4 Parkway subsists until title is acquired and the route is subsequently formally transferred to the jurisdiction and control of the New Jersey Highway Authority. However, see *R. R.* 4:38–3, formerly *Rule* 3:25–3.

The extent of the lands of the defendant required for the Route 4 Parkway was stated in the complaint to have been "determined to be 28.48 acres, 20.70 acres of which are claimed by the defendant association to be eligible and authorized for cemetery use by virtue of *Chapter* 227, *L.* 1941 (*N. J. S. A.* 8:3–4.2), and the certificate filed on or about August 10, 1945, with the Clerk of the Township of Woodbridge."

The plaintiff (and his predecessor in office) were unable to acquire the said 20.70 acres of the defendant's lands by agreement. The complaint herein further avers that in July 1951 the plaintiff instituted condemnation proceedings (under *R. S.* 27:7–22 and *R. S.* 20:1–1 *et seq.*), that condemnation commissioners were appointed on October 28, 1951 and that the hearings before the commissioners, and the time for the filing of their report, have been postponed from time to time.

The complaint asserted that:

"It is essential that the above outlined controversies as to the constitutionality of Chapter 227, L. 1941, and as to the validity of the defendant Association's attempted compliance with the requirements of Chapter 227, L. 1941, be finally determined in advance of the hearing before Condemnation Commissioners so that the

Commissioners may know whether the 20.70 acres in question are to be valued as ordinary lands or as lands authorized and eligible for cemetery use. The Commissioners lack lawful jurisdiction to decide these controversies. The statutory function of the Commissioners, as prescribed in *R. S.* 20:1-9, is limited to 'viewing and examining the land or other property and making a just and equitable appraisement of the value of the same, and an assessment of the amount to be paid by the petitioner for the land or other property and damage aforesaid, as of the date of the filing of the petition and order thereon.' The Commissioners lack lawful jurisdiction to decide the constitutionality of a statute. The Commissioners equally lack lawful jurisdiction to decide the validity of an attempted compliance with the requirements of a statute. These questions, because they are beyond the lawful authority and jurisdiction of the Commissioners, must therefore be decided independently in a court of law."

The plaintiff sought judgment declaring that the lands and premises of the defendant association, comprising 20.70 acres and described in paragraph 12 of the complaint, are neither eligible nor authorized for cemetery use, in that:

(A) *L.* 1941, *c.* 227, is unconstitutional special legislation null, void and of no effect, contravening the following provisions of the New Jersey and Federal Constitutions:

"(a) The legislature shall not pass private, local or special laws * * * Granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever. *N. J. Const.* 1844, *Art.* IV, *Sec.* VII, *par.* 11; *N. J. Const.* 1947, *Art.* IV, *Sec.* VII, *par.* 9, *clause* 8.

(b) The legislature shall pass no special act conferring corporate powers. *N. J. Const.* 1844, *Art.* IV, *Sec.* VII, *par.* 11; *N. J. Const.* 1947, *Art.* IV, *Sec.* VII, *par.* 9.

(c) No general law shall embrace any provision of a private, special or local character. *N. J. Const.* 1844, *Art.* IV, *Sec.* VII, *par.* 4; *N. J. Const.* 1947, *Art.* IV, *Sec.* VII, *par.* 7.

(d) No private, special, or local bill shall be passed, unless public notice of the intention to apply therefor, and of the general object thereof, shall have been previously given. *N. J. Const.* 1844, *Art.* IV, *Sec.* VII, *par.* 9; *N. J. Const.* 1947, *Art.* IV, *Sec.* VII, *par.* 8.

(e) nor shall any State * * * deny to any person within its jurisdiction the equal protection of the laws. *U. S. Const., Fourteenth Amendment.*"

(B) The certificates and descriptive maps filed by the defendant association with the Clerk of the Township of

Woodbridge on or about August 10, 1945 and January 2, 1946, respectively, are null and void and of no effect because all of the lands described and included therein were not, as required by *L.* 1941, *c.* 227, acquired by the defendant association from the township in which the association is situate, namely the Township of Woodbridge.

(C) The certificates and descriptive maps filed by the defendant association with the Clerk of the Township of Woodbridge on or about August 10, 1945 and January 2, 1946, respectively, are null and void and of no effect because all of the lands described and included therein were not, as required by *L.* 1941, *c.* 227, acquired by the defendant association at public sale.

(D) The certificates and descriptive maps filed by the defendant association with the Clerk of the Township of Woodbridge on or about August 10, 1945 and January 2, 1946, respectively, are null and void and of no effect because the lands described and included in such certificates and descriptive maps unlawfully exceed the maximum limitation of 125 acres imposed by *L.* 1941, *c.* 227.

The defendant on March 2, 1953, having filed no answer, moved for an order of dismissal of the complaint upon the grounds that (1) the trial court lacked jurisdiction over the subject matter, and (2) the plaintiff failed to state a claim upon which relief can be granted. On April 29, 1953 the trial court denied the defendant's motion without prejudice to defendant's right to renew the motion after trial. The defendant appealed to the Superior Court, Appellate Division, under *Rule* 4:2–2(*a*), as amended, *supra*. Prior to hearing there certification was allowed as hereinabove noted.

The questions involved on this appeal include: (a) Has the Superior Court jurisdiction over the subject matter in this action? (b) Has the plaintiff the status to maintain this action? (c) Is the plaintiff afforded an adequate remedy in the condemnation proceeding instituted in 1951 and therefore barred from seeking relief by way of declaratory judgment? (d) Is the plaintiff estopped by laches from asserting (1) the unconstitutionality of *L.* 1941, *c.* 227

(*N. J. S. A.* 8 :3–4.2), *supra,* and (2) the failure of defendant to effect actual compliance with *L.* 1941, *c.* 227 (*N. J. S. A.* 8 :3–4.2), *supra?*

## I. Jurisdiction Over the Subject-Matter

The defendant's preliminary question involved calls for a determination whether the Superior Court, Law Division, has jurisdiction over the subject matter of the plaintiff's action. The action as framed in the complaint was filed to obtain a judicial declaration of the *status* of lands, *i. e.,* whether the specific 20.70 acres purportedly owned by the defendant were acquired or designated as cemetery lands by defendant under a valid statute and, if so, in conformity with the procedure prescribed therein. The purpose of the plaintiff in seeking this declaration is to establish the existence or non-existence of an important factor in relation to the value of these 20.70 acres, which have been taken by the State (for highway purposes) in the exercise of the sovereign power of eminent domain.

Jurisdiction over the subject matter does not depend upon the sufficiency of a complaint in a particular case, nor the technical manner in which the cause is pleaded. *Baron v. Peoples National Bank of Secaucus,* 9 *N. J.* 249, 258 (1952). It is the *power* of the court to hear and determine cases of the class to which the one to be adjudicated is relegated. *Petersen v. Falzarano,* 6 *N. J.* 447, 454 (1951).

The sources to be searched in the quest for the answer to the inquiry whether jurisdiction over the subject matter is vested in a given court are the Constitution, the statutes and the common law, and now, where the power has been so placed in New Jersey by *N. J. Const.* 1947, the rules promulgated by this court. (For example see the provisions expressed in *N. J. Const.* 1947, *Art.* VI, *Sec.* III, *pars.* 3, 4; *Sec.* V, *par.* 4).

*N. J. Const.* 1947, in *Art.* VI, *Sec.* III, *par.* 2, provides that the Superior Court "shall have original general

jurisdiction throughout the State in all causes" and in *Art.* XI, *Sec.* I, *par.* 3, provides that "All law, statutory and otherwise, * * * in force at the time this Constitution or any Article thereof takes effect shall remain in full force until they expire or are superseded, altered or repealed by this Constitution or otherwise," and *Art.* XI, *Sec.* IV, *par.* 3, provided that the jurisdiction of the former Supreme Court and Court of Chancery "shall be transferred to * * * the Superior Court according as jurisdiction is vested" in the Superior Court "under this Constitution." These provisions, read together, vested in the Superior Court constitutional jurisdiction over all causes within the jurisdiction of the former Supreme Court and former Court of Chancery, subject only to the express alterations thereof contained in the 1947 charter. One of these alterations was the power vested in this court by rule to declare the causes. to be heard in the Appellate Division, the Law Division and the Chancery Division, *N. J. Const.* 1947, *Art.* VI, *Sec.* III, *par.* 3, *supra.*

*R. S.* 2:26–68 on September 15, 1948, the effective date of the Judicial Article of the New Jersey Constitution of 1947, provided that all courts of record in this State "shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed." The source of this statutory provision was *L.* 1924, *c.* 140, *secs.* 1, 5, *pp.* 312, 313, of which the former Court of Errors and Appeals said, in *McCrory Stores Corp. v. S. M. Braunstein, Inc.*, 102 *N. J. L.* 590, 592 (*E. & A.* 1926):

"The Declaratory Judgment Act * * * confers upon our courts of record, within their respective jurisdictions, power to declare rights, status, or other legal relations, although no further relief is or could be claimed * * *."

This declaration of the former Court of Errors and Appeals in the decision in the *McCrory* case, *supra,* was based (102 *N. J. L.*, at *page* 593) upon the philosophy inherent in an 1873 statute declared constitutional in *In re Public Utility*

*Board,* 83 *N. J. L.* 303, 304–308 (*Sup. Ct. en banc,* 1912). The act is a remedial one that "broadens the rationale of remedies long cognizable" in the several courts of record in this State. *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235, 239 (1949). The revision of Title 2 of the Revised Statutes effective January 1, 1952, has effected no change in the general purpose or philosophy of the act. *R. S.* 2 :26–68, *supra,* is now designated as *N. J. S.* 2A :16–52.

█ The matter before us in effect seeks a declaration that the defendant has not lawfully subjected the 20.70 acres of land in question to cemetery use. No judgment setting aside the instruments or voiding the formal acts taken to achieve the result of subjection of these lands to cemetery use is sought. The plaintiff appears not to question defendant's title, only the existence of its right to designate these acres as "cemetery" lands. Were the plaintiff a party having the right to prevent such use his action might be for injunctive relief (an equitable remedy) or *certiorari* to test the authority of the Clerk of the Township of Woodbridge to accept for filing the certificates and maps relative thereto (a remedy formerly pursued by prerogative writ, in the former Supreme Court). These are not the sole causes of action that might have been considered as emanating from the alleged non-compliance by the defendant with *L.* 1941, *c.* 227, *p.* 645 (*N. J. S. A.* 8 :3–4.2), *supra.* They serve merely to demonstrate that jurisdiction to review the constitutionality of the statute and efficacy of proceedings taken thereunder might have been found within the general jurisdiction of either the former Supreme Court or the former Court of Chancery. It is clear that the Superior Court has jurisdiction of the subject matter. In exercising that jurisdiction it has the power to grant the declaratory relief detailed in the Uniform Declaratory Judgments Law, in any of its three Divisions. No limiting rule under *N. J. Const.* 1947, *Art.* VI, *Sec.* III, *pars.* 3 and 4, *supra,* has been promulgated. *R. R.* 4 :58–1 and *R. R.* 4 :58–2 apply equally to the Law and Chancery Divisions and are not restrictive of the statutory provisions. *R. R.* 4 :88–10 *et seq.,* insofar as actions

in which declaratory judgments may be sought are affected thereby, relate only to matters involving the validity of any administrative rule promulgated by any state agency. *R. R.* 4:93–2 and *R. R.* 4:98–1 require declaratory judgment actions concerning the validity of marriage to be tried in the Chancery Division. In the absence of any other rule, there is no doubt of the fact that the Law Division of the Superior Court has jurisdiction of the subject matter involved in the complaint in this case. This is not to be deemed to mean that the Chancery Division does not also have such jurisdiction. That question is not before us.

## II. Status of the Plaintiff

The next question involved is whether the plaintiff, a state administrative officer, has the requisite capacity to maintain this suit.

The pertinent portion of the Uniform Declaratory Judgments Law contained in *N. J. S.* 2A:16–53 provides:

> "A person * * * whose rights, status or other legal relations are affected by a statute, * * * contract or franchise, may have determined any question of construction or validity arising under the * * * statute * * * contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

It is settled that proceedings of this nature are restricted by the general rule of law that requires an action to be prosecuted in the name of a real party in interest. *New Jersey Bankers Ass'n v. Van Riper,* 1 *N. J.* 193, 196 (1948); *Borchard, Declaratory Judgments* (2nd ed. 1941), *Part II, chapter III, pp.* 255 *et seq.* Where a statute is questioned on constitutional grounds and that statute affects a state officer's duties or the use of personnel and funds of his department, he is deemed an indispensable defendant to the action. It has been so held with respect to the State Highway Commissioner, the state officer involved in this suit (although the office was then occupied by a person other than the present plaintiff), in *New Jersey Turnpike Author-*

*ity v. Parsons, supra* (3 *N. J.*, at *page* 240). *Cf. In re Van Syckle*, 118 *N. J. L.* 578, 580 (*E. & A.* 1937).

It has been stated that public officers are entitled to have their legal duties determined judicially by action for declaratory judgment. 1 *Anderson, Declaratory Judgments* (1951), *sec.* 159, *p.* 307. And it has stated that the "state itself and its political subdivisions and bureaus are proper parties plaintiff." *Borchard, Declaratory Judgments* (1941), *pp.* 264. *Cf. City of Mobile v. Board of Water and Sewer Com'rs.*, 258 *Ala.* 669, 64 *So.* 2d 824, 825 (*Ala. Sup. Ct.* 1953); *Board of Public Works of Rolla v. Sho-Me Power Corp.*, 362 *Mo.* 730, 244 *S. W.* 2d 55, 61–62 (*Mo. Sup. Ct.* 1951); *State ex rel. Smrha, Director of Insurance v. General American Life Ins. Co.*, 132 *Neb.* 520, 272 *N. W.* 555, 557–558, (*Sup. Ct.* 1937).

Further, there is precedent for resort by a governmental agency to an action for a declaratory judgment to settle disputed matters in connection with a condemnation proceeding. See *Syracuse Grade Crossing Comm. v. Delaware L. & W. R. Co.*, 197 *Misc.* 192, 97 *N. Y. S.* 2d 279 (*Sup. Ct.* 1941), modified on other grounds, 263 *App. Div.* 930, 32 *N. Y. S.* 2d 620 (*App. Div.* 1942), affirmed *per curiam* 290 *N. Y.* 632, 49 *N. E.* 2d 131 (*Ct. App.* 1943). *Cf. Black River Regulating Dist. v. Adirondack League Club*, 282 *App. Div.* 161, 121 *N. Y. S.* 2d 893, 898 (*App. Div.* 1953).

Public officials of the status of the plaintiff "stand in a fiduciary relationship to the people whom they have been elected or appointed to serve." *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433, 474 (1952), *certiorari* denied 344 *U. S.* 838, 73 *S. Ct.* 25, 97 *L. Ed.* 652 (1952), rehearing denied 344 *U. S.* 888, 73 *S. Ct.* 181, 97 *L. Ed.* 687 (1952). The plaintiff has the right to protect his *cestuis que trust* and in doing so his interest in protecting the public from use of its moneys for the benefit of private parties by virtue of an invalid statute seems undeniable. The right to resort to the Uniform Declaratory Judgments Law in an analogous respect has been accorded to fiduciaries generally, *Fidelity Union Trust Co. v. Price*, 11 *N. J.* 90 (1952), and

we perceive no substantial cause for the application of a divergent philosophy in the matter presented for declaration in the instant proceedings.

For these reasons we conclude that the plaintiff was clothed with the proper status to maintain an action for a declaratory judgment.

### III. AVAILABILITY OF ADEQUATE ALTERNATE REMEDY

The defendant has asserted as another question involved in this appeal that the plaintiff is afforded an adequate remedy in the condemnation proceedings initiated in 1951 and therefore the relief of declaratory judgment is not available to him.

■ *N. J. S.* 2A:16–61 provides that the court "may refuse to render or enter a declaratory judgment, when, if rendered or entered, it would not terminate the uncertainty or controversy giving rise to the proceeding." There is no doubt here that the declaratory judgment would terminate the "uncertainty or controversy" that gave rise to the action for declaratory judgment: namely, the status as cemetery lands under *L.* 1941, *c.* 227, *supra,* of the 20.70 acres of land involved. Therefore we see no abuse of discretion in the trial court's retention of jurisdiction even where the declaratory judgment sought will not resolve the principal controversy, the issue of the value of the 20.70 acres, already taken by the plaintiff.

■ The statute provides that it is "remedial" and "Its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *N. J. S.* 2A:16–51. It is to be liberally construed, *ibid.,* although it must be borne in mind that liberal construction does not connote an extension of the boundaries delineated by the statutory phraseology as commonly used. *Grogan v. DeSapio,* 11 *N. J.* 308, 315–316 (1953).

The statute is liberally administered, however, to carry out its purposes and intent. *Blackman v. Iles,* 4 *N. J.* 82, 87 (1950). It broadens the rationale of remedies long

cognizable in other courts. *Cf. New Jersey Turnpike Authority v. Parsons, supra* (3 *N. J.*, at *pages* 239–240). In that respect the Uniform Declaratory Judgments Law "supplements, and is not a substitute for, existing remedies," *Weissbard v. Potter Drug & Chemical Corp.*, 6 *N. J. Super.* 451, 456 (*Ch. Div.* 1949), affirmed for the reasons expressed in the opinion of Judge Freund in the Superior Court, Chancery Division, 4 *N. J.* 115 (1950).

These principles call for a determination whether the plaintiff would be afforded an adequate consideration of the matter of the validity of and defendant's purported compliance with *L.* 1941, *c.* 227 (*N. J. S. A.* 8:3–4.2), *supra*, in the condemnation proceedings.

█ The power of eminent domain is a high sovereign power that has been allotted to the legislative branch of the government since the Magna Carta. See *Blackstone's Commentaries* (*Browne's ed.* 1897), *pp.* 39, 44; *Jahr, Eminent Domain* (1953), *sec.* 1, *pp.* 1–5. Accord: *Bergen County Sewer Authority v. Borough of Little Ferry*, 5 *N. J.* 548, 552 (1950); *State Highway Comm. v. City of Elizabeth*, 102 *N. J. Eq.* 221, 225 (*Ch.* 1928), affirmed 103 *N. J. Eq.* 376 (*E. & A.* 1928); *The Tide-water Company v. Coster*, 18 *N. J. Eq.* 518, 520–522 (*E. & A.* 1866). It has been held that constitutions do not give, but merely place limitations upon the power of eminent domain which otherwise would be without limitation. See for example, *City of Cincinnati v. Louisville & N. R. Co.*, 223 *U. S.* 390, 404–407, 32 *S. Ct.* 267, 56 *L. Ed.* 481, 485–486 (1912); *Jahr, Eminent Domain, supra, p.* 3; 18 *Am. Jur., Eminent Domain, secs.* 7–10, inclusive, *pp.* 635–639; *cf. Currie v. New York Transit Company and National Docks Railway Company*, 66 *N. J. Eq.* 313, 315 (*E. & A.* 1904); *Sinnickson v. Johnson*, 17 *N. J. L.* 129, 145 (*Sup. Ct.* 1839). *Cf.* 2 *Lewis, Eminent Domain* (*3rd ed.* 1909), *sec.* 448, *pp.* 806–807.

The proof of the above statements may be succinctly demonstrated. Clause 39 of the Magna Carta provided "No freeman shall be * * * disseised * * * unless by the lawful judgment of his peers, *or by the law of the land.*"

(Emphasis supplied). This was the apparent common law origin of the placement of the sovereign power of eminent domain in the legislative branch of the government, *Blackstone's Commentaries, supra.* There is no doubt that the power remained so ensconced at the time of the American Revolution, and this fact is attested by the authorities hereinbefore cited. The Constitution of 1776, by its specific terms was a charter for the government of the colony of New Jersey (*N. J. Const.* 1776) to be a temporary departure from the government of the crown of Great Britain (see *N. J. Const.* 1776, last paragraph). It provided (*N. J. Const.* 1776, *par.* XXII):

"That the common law of England, as well as so much of the statute law, as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature; such parts only excepted, as are repugnant to the rights and privileges contained in this charter; * * *."

This clause clearly continued the common law authority of the Legislature to retain and exercise the sovereign power of eminent domain. The rights and privileges expressed in the 1776 charter did not dissipate this ancient legislative prerogative.

*N. J. Const.* 1844, *Art.* IV, *Sec.* I, *par.* 1, vested "the legislative power" in the Senate and General Assembly, and the common law powers were continued in the following language (*N. J. Const.* 1844, *Art.* X, *par.* 1):

"The common law and statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature;"

There was no constitutional restriction placed upon the Legislature's status as custodian of the sovereign power of eminent domain.

*N. J. Const.* 1947, *Art.* IV, *Sec.* I, *par.* 1, is identical with *N. J. Const.* 1844, *Art.* IV, *Sec.* I, *par.* 1, *supra; N. J. Const.* 1947, *Art.* XI, *Sec.* I, *par.* 3, provides, *inter alia*:

"All law, statutory and otherwise * * * in force at the time this Constitution or any Article thereof takes effect shall remain

in full force until they expire or are superseded, altered or re-pealed by this Constitution or otherwise."

Thus the 1947 charter continued the legislative authority to provide for the exercise of the sovereign power of eminent domain, restricted only by the pertinent clauses of that Constitution. The restrictions (other than such as relate to general rights) are concerned solely with the matter of compensation to persons whose property is taken under an exercise of this legislative power. In both the New Jersey Constitution of 1844 and the New Jersey Constitution of 1947 these references to compensation, coupled with the clear mandate continuing existing common law principles, constitute recognition of the broad common law authority of the Legislature to control resort to the sovereign power of eminent domain.

The right to exercise this sovereign power of eminent domain has been delegated by the Legislature of this State to numerous agencies of the State and its political subdivisions. The scope of the exercise of the power by the persons or courts delegated to exercise it must necessarily be circum-scribed by the legislative enactment. Prior to the enactment of *L.* 1953, *c.* 20, it was held that the courts did not exercise their general jurisdiction in these matters, but only the statutory jurisdiction. *Bergen County Sewer Authority v. Borough of Little Ferry, supra* (5 *N. J.,* at *page* 552). As hereinbefore stated, the specific authority in the plaintiff (and his predecessor in office) to acquire the lands of the defendant in question by condemnation stems from *L.* 1947, *c.* 328 (which authorized Route 4 Parkway), *L.* 1945, *c.* 83 (under which, in *L.* 1947, *c.* 328, *supra,* the Legislature designated Route 4 as a "parkway"), *R. S.* 27:7–1 *et seq.* (the general authority of the State Highway Commissioner over high-ways—section 22 of which, *R. S.* 27:7–22, provided that his exercise of the power of eminent domain should be "in the manner provided" in *R. S.* 20:1–1 *et seq.*), and the general statutes on eminent domain, *R. S.* 20:1–1 *et seq.* Therefore the solution to the question involved on this aspect of the case rests in the terms of the latter statutory provisions.

*R. S.* 20:1–2 authorized certain judicial officers to appoint three condemnation commissioners "to fix the compensation to be paid" for lands taken or to be taken by the petitioning party. In this respect the most the appointing judicial officer could have determined was whether he was authorized to make the appointment so the specific controversy upon which the present action is grounded was not within the scope of that proceeding. *Cf. Bergen County Sewer Authority* v. *Borough of Little Ferry, supra* (5 *N. J.*, at *page* 552). We do not determine the scope of the Superior Court's power under *R. S.* 20:1–2, as amended by *L.* 1953, *c.* 20, *sec.* 1, effective July 1, 1953, which provides that the court "shall have and shall exercise its full jurisdiction," since the order appealed from in the present case was entered April 29, 1953, prior to the effective date of the amendatory legislation. Nor (for the same reason) do we consider the effect of R. R. 4:92 (formerly *Rule* 3:81*C*, adopted June 25, 1953, to be effective July 1, 1953).

Upon appointment and qualification the condemnation commissioners' authority was to "proceed to view and examine the land or other property and make a just and equitable appraisement of the value of the same, and an assessment of the amount to be paid by the petitioner for the land or other property * * * as of the date of the filing of the petition and order thereon." *R. S.* 20:1–9. Scrutiny of these provisions discloses no authority in the condemnation commissioners to declare a statute unconstitutional nor to refuse to recognize it on the premise that it is unconstitutional, without the mandate of an adjudication of a competent judicial tribunal to that end. In *Schwartz v. Essex County Board of Taxation,* 129 *N. J. L.* 129, 132 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 177 (*E. & A.* 1943), it was held that: "It is indisputable that the determination of the constitutionality of an act of the legislature rests with a judicial body; not with a *quasi*-judicial body * * *" and administrative tribunals must "accept a legislative act as constitutional until such time as it has been declared to be unconstitutional by a qualified judicial body." That philosophy is

controlling on this aspect of the matter *sub judice*. *Cf. State Highway Commission v. Dey*, 110 *N. J. L.* 197, 198 (*E. & A.* 1933).

The remaining facet of this question involved is whether the statutory appeal for review of the condemnation commissioners' report afforded an adequate medium for the disposition of the controversy between the plaintiff and defendant concerning the validity and application of *L.* 1941, *c.* 227 (*N. J. S. A.* 8:3–4.2, *supra*). We are persuaded that it did not. *R. S.* 20:1–16 provided that the court to which the appeal was taken was vested with "power to hear and adjudge" the same and to direct a proper issue for the trial to be framed. This limited the review to the questions determined by the condemnation commissioners. *Cf. State Highway Commission v. Dey, supra; Packard v. Bergen Neck Ry Co.*, 54 *N. J. L.* 553, 564 (*E. & A.* 1892); *Leeds v. Camden & Atlantic R. R. Co.*, 53 *N. J. L.* 229, 231 (*E. & A.* 1890). We do not, however, determine whether the same result would obtain under *R. R.* 4:92 (formerly *Rule* 3:81C, effective July 1, 1953), *supra*, and *R. S.* 20:1–16, as amended by *L.* 1953, *c.* 20, *sec.* 25 (effective July 1, 1953), in view of the language contained in *R. S.* 20:1–2, as amended by *L.* 1953, *c.* 20, *sec.* 1, *supra*.

The query is invited by the defendant's brief whether the plaintiff was afforded an adequate remedy by way of an action in lieu of *certiorari*, the relief in which would appear to be a judgment setting aside the instruments and official actions whereby the defendant acquired the large tract of land including the 20.70 acres involved herein if the plaintiff were to prevail on either the premise of unconstitutionality or the premise of non-compliance with the statute. See *Packard v. Bergen Neck Ry Co., supra*. We find it unnecessary to determine whether the plaintiff is clothed with sufficient authority to initiate such a direct proceeding. His authority, however, is not concurrent with the authority of the Attorney-General. The present application by the plaintiff relates only to the specific 20.70 acres and his sole interest is protection of the public, not in relation to burials, but in

relation to the price the public is to pay for that specific portion of the defendant's lands. The former prerogative writs have been superseded and in lieu thereof review, hearing and relief "shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court." *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 4. *Rule* 3:81–2 (now *R. R.* 4:88–2) provides that civil actions in lieu of the former prerogative writs be filed in Law Division of the Superior Court. The rules provide for actions in lieu of prerogative writ to be initiated by complaint as in other civil actions. *Rule* 3:81–3 amended December 7, 1950 (now *R. R.* 4:88–3). An action for declaratory judgment and an action in lieu of prerogative writ are both actions within the general jurisdiction of the Superior Court, Law Division—the sole difference in the present practice pertinent to the questions involved in this appeal lies in the extent and nature of the relief sought. This, then, seems an appropriate action under *R. S.* 2:26–68, *supra,* which permits the declaratory relief to be granted "* * * whether or not *further* relief is or could be claimed." (Emphasis supplied.)

Upon consideration of the limited relief sought and the nature of the proceedings in eminent domain instituted in this case, we are of the opinion that the retention of jurisdiction by the Superior Court, Law Division, was not an abuse of discretion. No other completely adequate proceeding was available to the plaintiff for the relief sought.

## IV. Estoppel

The defendant, among the questions involved in this case, asserts that the plaintiff was estopped by laches to seek the relief requested in his complaint in this cause. We find no merit in this contention. We discern no prejudice to the defendant occasioned by the plaintiff's delay, and doctrines of laches and estoppel are not applied against the State to the same extent as against private parties. *City of Bayonne v. Murphy & Perrett Co.,* 7 *N. J.* 298, 311 (1951).

## V. ATTORNEY-GENERAL AS A PARTY

Among the questions involved is the question whether the complaint for declaratory judgment should have been dismissed for failure to join the Attorney-General of New Jersey, *eo nomine,* as a party. This question was raised at oral argument. R. S. 2:26–72, *inter alia,* required the Attorney-General to be served, but this provision was not reenacted in N. J. S. 2A:16–56, effective January 1, 1952 (prior to the date of the filing of the complaint herein). The principle involved in R. S. 2:26–72, *supra,* was expressed in *Rule* 3:24–2, amended January 1, 1952 (now R. R. 4:37–2), which required notice to the Attorney-General only in an action "to which the state or an officer or agency thereof is not a party." The plaintiff instituted the action for declaratory judgment in his capacity as an officer of the State. Therefore the rule was satisfied in this respect.

## VI. POWER TO ENTER POSSESSION IN CONDEMNATION BEFORE MAKING COMPENSATION

At oral argument of this cause the question was raised whether constitutionally possession could be taken by the party exercising the power of eminent domain prior to award and payment of the value of the lands in question.

The general rule in most jurisdictions elsewhere is that constitutionally the State may enter into possession prior to payment for the lands taken. See *Jahr, Eminent Domain* (1953), sec. 40, p. 60, and authorities there cited. In the absence of a specific constitutional prohibition, there is nothing that requires the Legislature to condition the exercise of the power of eminent domain upon a prior payment of compensation. *Williams v. Parker,* 188 U. S. 491, 23 S. Ct. 440, 47 L. Ed. 559 (1903) ; *McGehee, Due Process of Law* (1906), p. 291. In *Williams v. Parker, supra,* Mr. Justice Brewer stated:

"So far as the Federal Constitution is concerned, it is settled by repeated decisions that a state may authorize the taking of posses-

sion prior to any payment, or even final determination of the amount of compensation." (188 *U. S.* at *page* 502, 23 *S. Ct.* at *page* 442, 47 *L. Ed.*, at *page* 562.)

*N. J. Const.* 1947, *Art.* I, *par.* 20, provides:

"Private property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."

*N. J. Const.* 1947, *Art.* IV, *sec.* VI, *par.* 3 relating to the condemnation of property by agencies or political subdivisions of the State also provides "such taking shall be with just compensation."

It appears that the members of the Committee on Rights, Privileges, etc., of the 1947 Constitutional Convention were of the opinion that the State (or agencies or political subdivisions) could take property before payment under the New Jersey Constitution of 1844 (but individuals or private corporations could not). III *Proceedings, N. J. Constitutional Convention of* 1947, *pp.* 10–11, *p.* 174.

This conclusion is buttressed by comparison of *N. J. Const.* 1844, *Art.* I, *par.* 16 (which related to condemnation by public agencies and did not require compensation "first") and *N. J. Const.* 1844, *Art.* IV, *Sec.* VII, *par.* 8 (which related to condemnation by individuals and private corporations and required compensation to be "first" made), a distinction expressly carried over to the New Jersey Constitution of 1947 and incorporated therein in Art. I, par. 20, *supra. N. J. Const.* 1947, *Art.* IV, *sec.* VI, *par.* 3, *supra,* does not limit or alter this construction.

In the 1844 Convention the question of time of compensation was thoroughly debated and a motion to insert the word "first" in the clause that later was adopted as *N. J. Const.* 1844, *Art.* I, *par.* 16, *supra,* was defeated. Proceedings, *New Jersey Constitutional Convention,* 1844, *pp.* 159–161, 414–418. This was confirmed in the discussions relating to *N. J. Const.* 1844, *Art.* IV, *Sec.* VII, *par.* 8, *supra,* where the requirement for payment of compensation before taking was

limited to individuals and private corporations. *Id., pp.* 568–570. See also *Id., pp.* 591–592.

 Insofar as statutory authority of the State Highway Commissioner is concerned, at the time the present plaintiff or his predecessor in office took possession of the 20.70 acres of land involved in this action, *R. S.* 27:7–22, *supra,* authorized him to "enter upon and take property in advance of making compensation therefor." *R. S.* 20:1–29 confirmed this authority.

### Conclusion

For the reasons expressed in this opinion the order of the Superior Court, Law Division, appealed from is affirmed. The cause will be remanded to that court for further proceedings consistent with the practice and procedure applicable thereto.

Heher, J. (dissenting). I find no substantial ground for deviating from the procedure laid down in *R. S.* 20:1–1, *et seq.* to determine the compensation payable for the lands taken in the exercise of the sovereign power of eminent domain; quite the contrary. This is, after all, but a proceeding to settle the elements of value entering into the appraisement of the land taken; and if this course be affirmed as a justifiable exercise of judicial power, then the Declaratory Judgments Act may be invoked whenever there is controversy as to the constituents of land value, in advance of and in derogation of the statutory assessment function. This, I submit, is not the office of the declaratory judgment.

The assessment procedure provided by the Eminent Domain Act affords the mechanism for determining the value of the land, in keeping with the essentials of due process. Three disinterested freeholders are appointed commissioners "to examine and appraise the land or property and to assess the damages," on notice to the persons interested. *R. S.* 20:1–6. *Ryan v. Housing Authority of Newark,* 125 *N. J. L.* 336 (*Sup. Ct.* 1940). In the event of an appeal from the report

of the commissioners, the court is empowered to direct the framing of "a proper issue for the trial" and "to order a jury struck and a view of the premises." *R. S.* 20:1–16. On appeal thus taken, "the matter of compensation and damage is to be heard anew, independently of the award, as though it had originated in the court, and * * * it is to be decided by the court"; the court is invested with jurisdiction, "generally," to try "the issue as other issues are tried in that court," and the adjudication shall take the form of a judgment entered upon the verdict of the jury; the judgment "supersedes the award of the commissioners," and becomes "a new means for the ascertainment of the just compensation which is to be paid to the landowner." *Ringle v. Board of Chosen Freeholders,* 56 *N. J. L.* 661 (*E. & A.* 1894).

The statutory declaratory judgment was not designed to aid in the fulfillment of the assessment function, as is here proposed. The Eminent Domain Act is in this regard a self-contained measure for the fixing of compensation by a jury trial in a court of plenary jurisdiction; such is the absolute right of the parties in interest.

The adjudicatory declaration sought here, it is stated in the opinion of my brothers, is "that the defendant has not lawfully subjected the 20.70 acres of land in question to cemetery use," such as will "terminate the 'uncertainty or controversy' that gave rise" to this action, using the language of *N. J. S.* 2A:16–61.

But the judgment cannot settle the question as to whether the lands may fairly be deemed available for cemetery uses, for in determining compensation it is proper to consider the use to which the land is naturally adapted. The inquiry is the market value, according to circumstances and conditions then existing or reasonably to be anticipated in the near future. *Ringwood Co. v. North Jersey District Water Supply Commission,* 105 *N. J. L.* 165 (*E. & A.* 1928). The reasonable use potential is an element to be taken into account. The wants of the community and the advantages of the land for a particular use are factors entering into the

inquiry. *McCandless v. United States*, 298 *U. S.* 342, 56 *S. Ct.* 764, 80 *L. Ed.* 1205 (1936) ; *Mississippi & Rum River Boom Co. v. Paterson*, 98 *U. S.* 403, 25 *L. Ed.* 206 (1879) ; 18 *Am. Jur.* 991, 992.

The right presently to devote the lands to cemetery uses is not necessarily the determinative inquiry; even though there be no immediate right, their peculiar suitability to such use is *ex necessitate* a circumstance bearing upon value. The whole is a question for the jury, controlled by the pertinent legal principles. Divided judicial inquiries have their disadvantages. Compare *Sisters of Charity v. Morris Railroad Co.*, 84 *N. J. L.* 310 (*E. & A.* 1913). But here the assessing jurisdiction has a statutory genesis, and the procedure provided by the Legislature should be followed, involving as it does the granted right of trial by jury. The appraisement of the lands in the particular circumstances is peculiarly within the province of the jury, subject, of course, to the guidance of the court in matters of law.

It is in the nature of the discretionary declaratory jurisdiction that it may not be invoked where there is actually pending between the same parties an action in which all the issues are determinable. *Woollard v. Schaffer Stores Co.*, 272 *N. Y.* 304, 5 *N. E.* 2d 829 (*Ct. App.* 1936) ; 109 *A. L. R.* 1262. See, also, *Washington-Detroit Theatre Co. v. Moore*, 249 *Mich.* 673, 229 *N. W.* 618 (*Sup. Ct.* 1930), 68 *A. L. R.* 105. See, also, 12 *A. L. R.* 76; 50 *A. L. R.* 48; 68 *A. L. R.* 120; 87 *A. L. R.* 1219, 1237.

I would reverse the order and dismiss the complaint.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN— 6.

*For reversal*—Justice HEHER—1.